### 22804

William W. KELLY, Individually, and as Executor of the Estate of A. Wilkes Knight, Appellant v. Rodney A. PEEPLES as Executor of the Estate of Pauline H. Knight and Elroy B. Dantzler, her Attorney-in-Fact, Respondents.

(362 S. E. (2d) 636)

Supreme Court

*Thomas B. Bryant, III*, of *Bryant, Fanning & Yarborough*, Orangeburg, *for appellant.*

*Richard B. Ness*, of *Early, Kemp & Ness*, Bamberg, *for respondents.*

Heard May 18, 1987.

Decided Nov. 23, 1987.

*Per Curiam:*

This appeal is from an order determining the validity of a 1972 written agreement and ordering its enforcement. We reverse.

In 1970, appellant began leasing laundromat equipment from his stepfather for $300 per month. On April 28, 1972, the stepfather signed a bill of sale purporting to "bargain, sell, and deliver" to appellant the laundromat equipment and his interest in the leases of the two buildings where the equipment was located. On August 29, 1972, appellant, his stepfather, and his stepfather's wife signed a purchase agreement providing that appellant pay the $300 per month to the stepfather until the stepfather's death and then to the stepfather's wife until her death. This agreement was signed, witnessed, notarized, and filed in the Orangeburg County Courthouse.

In October 1973, some 14 months after the agreement was signed, the stepfather wrote a will. One clause provided: "I

hereby will and bequeath unto my son, William W. Kelly, all of the business interests, leases, and other interests referred to in the agreement between William W. Kelly and A. W. Knight dated August 29, 1972, upon condition that for and during the term of the life of my widow, Pauline Knight, William W. Kelly pay unto her monthly, the sum of Three Hundred ($300.00) Dollars as specified in said agreement." In August 1983, a few weeks before his death, the stepfather updated his will but left this provision unchanged.

Appellant commenced this action seeking to declare the 1972 agreement invalid on the ground it was mutually rescinded. Appellant claimed after the agreement was signed, his stepfather learned that for tax purposes it would be more advantageous for him to continue to lease the equipment rather than sell it. Appellant and his stepfather orally rescinded the agreement and appellant continued to lease the equipment through 1979. At the end of 1979, his stepfather gave him the equipment as a gift.

Respondent counterclaimed for enforcement of the 1972 agreement. They contended its validity was proven by the reference to it in the stepfather's will. After a non-jury trial, the circuit court found the agreement valid. It held appellant was indebted to his stepfather's wife in the amount of $24,516.45 and ordered that he continue to pay her $300 per month for her lifetime under the agreement.

This case was tried as an action in equity. Under our scope of review, we will find facts in accordance with our own view of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

Appellant first contends the trial court erred in finding his testimony regarding rescission of the agreement violated the Dead Man's Statute, S. C. Code Ann. § 19-11-20 (1976). Clearly, appellant was a party to this action and the testimony he sought to introduce: 1) dealt with a transaction or communication between appellant and the deceased; 2) was against a party prosecuting or defending the action as executor, heir-at-law, legatee, devisee, or survivor of such deceased person; and 3) affected a present interest of the appellant. Appellant's testimony, therefore, fell squarely within the Dead Man's Statute and the trial judge properly

refused to consider it. *See Long v. Conroy,* 246 S. C. 225, 142 S. E. (2d) 459 (1965).

We find, even without appellant's testimony, the preponderance of the evidence indicates the 1972 agreement was rescinded. The stepfather's tax returns and testimony of the accountant who prepared them overwhelmingly support this conclusion. These tax records do not reflect a sale of the equipment, nor a recapture of any investment tax credit, but do reflect depreciation and rental income from the equipment through 1979. The 1980 tax return includes a handwritten notation by the accountant that the stepfather made a gift of the equipment to appellant. Based on this evidence, we hold the record establishes rescission of the 1972 agreement. *See* 17A C.J.S. *Contracts* §§ 386 & 388 (oral rescission may be shown by surrounding circumstances).

Accordingly, the judgment of the Circuit Court is

Reversed.

HARWELL, J., dissenting.

HARWELL, Justice (dissenting):

I respectfully dissent and would affirm the Order of the Circuit Court with one modification and remand.

Appellant brought this action under the Uniform Declaratory Judgment Act, S. C. Code Ann. § 15-53-30 (1976), asking the court to determine the validity of a 1972 written agreement entered into by appellant, his stepfather, and his stepfather's wife. The trial court, sitting without a jury, found that the agreement was valid and held that the appellant was indebted to his stepfather's estate and to his stepfather's wife. I would affirm as modified and remand.

The factual situation giving rise to this litigation is somewhat involved. In 1970, appellant began leasing laundromat equipment from his stepfather for $300 per month. On April 28, 1972, the stepfather signed a bill of sale purporting to "bargain, sell, and deliver" unto appellant the laundromat equipment and any interest that he had in the leases of the two buildings where the equipment was located. On August 29, 1972, appellant, his stepfather, and his stepfather's wife signed an agreement which stated in relevant part that "for purchase of business enterprises, leases and other matters

. . ." appellant agrees to pay the stepfather $300 per month until the stepfather's death, and thereafter to pay $300 per month to the stepfather's wife until her death. This agreement was signed, witnessed, notarized and filed in the Orangeburg County Courthouse.

In October of 1973, some 14 months after the agreement was signed, the stepfather wrote a will. One provision provided that, "I hereby will and bequeath unto my son, William W. Kelly, all of the business interests, leases, and other interests referred to in agreement between William W. Kelly and A. W. Knight dated August 29, 1972, upon condition that for and during the term of the life of my widow, Pauline Knight, William W. Kelly pay unto her monthly, the sum of Three Hundred ($300.00) Dollars as specified in said agreement." On August 9, 1983, just a few weeks before his death, the stepfather updated his will. He altered, among other things, the provision immediately preceding the section quoted above, and he deleted the provision immediately following it. He left the provision set out above exactly as it had appeared in his 1973 will.

Appellant claims that shortly after making the agreement, his stepfather learned that, for tax purposes, it would be much more advantageous for him to continue to lease the equipment rather than sell it. Appellant sought to prove, therefore, that shortly after the agreement was made, he and his stepfather orally rescinded it. Appellant asserts that he continued to lease the equipment through 1979. He contends that at the end of 1979, when the equipment had an undepreciated value of approximately $6,500, his stepfather gave him the equipment as a gift. Respondents contend that the 1972 agreement is still in effect.

First, appellant argues that the trial court erred in finding that his testimony about the oral rescission of the agreement violated the Dead Man's Statute, S. C. Code Ann. § 19-11-20 (1976). Clearly, appellant was a party to this action and the testimony which he sought to have considered 1) dealt with a transaction or communication between appellant and a person deceased; 2) was against a party prosecuting or defending the action as executor, heir-at-law, legatee, devisee, or survivor of such deceased person; and 3) affected a present interest of the appellant. Appellant's

testimony, therefore, fell squarely within the Dead Man's Statute. *See Long v. Conroy*, 246 S. C. 225, 142 S. E. (2d) 459 (1965); *Davie v. Atkinson*, 291 S. C. 188, 352 S. E. (2d) 517 (App., 1987). The trial judge properly refused to consider the testimony. In any event, the trial judge noted in his order that, "I further find the greater weight of the evidence would allow the same result even if the 'Dead Man's Statute' were not applied."

Next, appellant contends that there is no evidence whatsoever to support the trial court's finding that the 1972 agreement is valid. The 1972 agreement itself provides some evidence for the trial judge's ruling. Perhaps the strongest evidence that this agreement was not rescinded is the reference to the 1972 agreement in the stepfather's will which he executed just a couple of weeks prior to his death in 1983.

It is incredible to suggest there was an oral recission of a written agreement when the parties realized the importance of the sales agreement by reducing it to writing. Further, and more importantly, is the fact that only a few days before the stepfather's death he again referred to the written agreement in his will. If the stepfather had already orally rescinded the agreement and made a gift of the equipment, why would he refer to it in his Last Will and Testament which was executed long after the *alleged* oral recission and gift took place? The answer is obvious. He considered the agreement valid irrespective of how it was treated for tax purposes. I agree with the findings of the trial judge who saw and heard the witnesses and to whom great deference should be given.

Finally, appellant asserts that the trial court erred in requiring the payment of *compound* interest since no provision of law nor any agreement between the parties provides for this. I agree and would remand to the trial court so that the principal amount owed can be determined and the interest can be calculated in accordance with S. C. Code Ann. § 34-31-20 (1976, as amended).

I would affirm as modified and remand.