647 S.E.2d 488

**HARDAWAY CONCRETE COMPANY, INC., Respondent,**

v.

**HALL CONTRACTING CORPORATION, Principal and Contractor; and Travelers Casualty & Surety Company of America, Surety, Defendants,**

**Of whom Hall Contracting Corporation, Principal and Contractor is Appellant.**

No. 4252.

Court of Appeals of South Carolina.

Heard Jan. 9, 2007.
Decided June 8, 2007.

218

M. Alan Peace and Donald W. Tyler, Jr., both of Columbia, for Appellant.

David M. Ratchford and Brian C. Gambrell, both of Columbia, for Respondent.

BEATTY, J.:

In this breach of contract action, Hall Contracting Corporation (Hall) appeals the master-in-equity's finding for Hardaway Concrete Company, Inc. (Hardaway) and awarding Hardaway attorney's fees. We affirm in part, reverse in part, and modify.

## FACTS

The South Carolina Public Service Authority (Santee Cooper) sought bids for suppliers and contractors in the construction of a new power plant in Cross, South Carolina. Initially, Santee Cooper sought bids from suppliers of the materials to be used in the construction process. Hardaway submitted a successful bid to become the concrete supplier and entered into a contract with Santee Cooper. The contract provided that Hardaway set up two on-site concrete plants: a primary plant with a rated capacity of 150 cubic yards of concrete per hour and a backup plant with a rated capacity of 100 cubic yards of concrete per hour. The contract specified the concrete be delivered to the jobsite in a "timely and continuous manner." Hardaway would be paid by the concrete placement contractor, not Santee Cooper, according to the cubic yards agreed to on the batch tickets. Further, the contract required Hardaway to furnish "[i]ce making and cooling equipment for temperature control during hot weather concrete placement" and provided for the price per pound of ice Hardaway would receive.

After accepting Hardaway's bid, Santee Cooper sought bids for concrete placement contractors for the foundation of the chimney. Hall submitted the lowest bid at $1,746,652. The other bids were higher than Hall's by at least $200,000.

Ultimately, Hall received the contract for the concrete placement work. Hall's contract provided that it would pay for the concrete by the cubic yards agreed to on the batch tickets.

Hall sent Hardaway a facsimile (First Facsimile) stating, "Hall Contracting agrees to the unit rates, terms and conditions listed in Santee Cooper contract ... (see attached copy)." The attached copy of the contract contained Hardaway's right to charge for ice. On March 17, 2003, Hall sent Hardaway a purchase order regarding the first pour, specifying how long the pour would take and stating it would be "using two pump and requires a minimum of 200 [cubic yards] per hour (100 [cubic yards] to each pump)." Although the purchase order contained a space for Hardaway to sign, Hardaway never signed the purchase order. Hall sent Hardaway a purchase order before each of the five pours, purporting to set out a specific schedule for the rate of the concrete. Hardaway never signed any of these purchase orders.

After the completion of the project, Hardaway billed Hall for the supplied concrete. Hall paid all but $45,123.84 and sent Hardaway a letter informing Hardaway that Hall was due a credit in that amount from Hardaway. Hardaway brought suit against Hall for breach of contract for failure to pay the $45,123.84. Hall answered and counterclaimed that it and Hardaway entered into an enforceable agreement to supply concrete at a minimum rate of 200 cubic yards per hour. Hall alleged Hardaway breached the contract and asked for damages of $45,123.84.

At trial, David Russell, a senior vice-president at Hall, testified that during the bid process, Hall contacted Hardaway to confirm the capacity of the concrete plants and learned the capacities Hall had been given were "rated capacities and not actual production capacities" and Hall could expect a maximum of 200 cubic yards per hour. He testified that Hall based a lot of its pricing on that information. Russell testified that Hall lost around $60,000 on the Santee Cooper job and probably made an error in estimating. Further he testified the error was made by an estimator who was fired, in part, for his mistakes in estimating.

The master found Hall was a third-party beneficiary in the contract between Hardaway and Santee Cooper, and Harda-

way was a third-party beneficiary of the contract between Hall and Santee Cooper. Further, the master found Hardaway and Hall also formed a contract in the First Facsimile. The master determined Hardaway produced and delivered the concrete as contemplated in the agreements and accordingly, Hall owed Hardaway the remainder of $45,123.84. Further, it found Hall fraudulently, and in bad faith, generated a list of back charges. Additionally, the master granted Hardaway's motion to amend its complaint to include a claim for attorney's fees under section 27–1–15 of the South Carolina Code (1991).

On January 5, 2006, the master held a separate hearing on attorney's fees. The master found that Hardaway had met its burden of showing Hall had not conducted a fair and reasonable investigation and was thus entitled to attorney's fees under section 27–1–15. Accordingly, the master awarded Hardaway attorney's fees of $53,592.56. This appeal followed.

## STANDARD OF REVIEW

On appeal of an action at law tried without a jury, the findings of fact of the trial court will not be disturbed unless found to be without evidence which reasonably supports the trial court's findings. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). The rule is the same whether the trial court's findings are made with or without reference. *Id.* The trial court's findings are equivalent to a jury's findings in a law action. *Chapman v. Allstate Ins. Co.,* 263 S.C. 565, 567, 211 S.E.2d 876, 877 (1975). This court must determine whether any evidence reasonably supports the factual findings of the trial court. *Townes Assocs., Ltd.,* 266 S.C. at 86, 221 S.E.2d at 776. Additionally, the appellate court can correct errors of law. *Okatie River, L.L.C. v. Southeastern Site Prep, L.L.C.* 353 S.C. 327, 334, 577 S.E.2d 468, 472 (Ct.App.2003). "This scope of review is equally applicable to the factual determinations of a master when, as in the present case, he enters final judgment." *Wigfall v. Fobbs,* 295 S.C. 59, 61, 367 S.E.2d 156, 157 (1988).

## LAW/ANALYSIS

### I. Interpretation of the contract

Hall argues the master erred in awarding judgment in favor of Hardaway. Specifically, Hall contends the master erred in

finding: (1) Hardaway was not bound by the concrete produc-
tion rates provided in the purchase orders and pour specifica-
tions; and (2) Hardaway was entitled to charge for ice.

## A. Pour Rate

Hall argues the master erred by not finding Hardaway was
bound by the pour specifications requested by Hall. Hall
argues the sale of concrete is a transaction of goods, and
therefore, Article 2 of the U.C.C. governed the transaction.[1]
Hall argues Hardaway was aware of the specifications and
knew that Hall was relying on Hardaway to provide concrete
consistent with those provisions.

However, Hall proceeded solely under a contract theo-
ry at trial. It did not raise the U.C.C. issue in its answer or in
arguments during trial. Because the issue was not raised
before the master, the master did not get the opportunity to
rule upon the question of whether Hardaway's actions violated
the U.C.C. Accordingly, this issue is not preserved for our
review and we may not address it. *In re Michael H.*, 360 S.C.
540, 546, 602 S.E.2d 729, 732 (2004) ("An issue may not be
raised for the first time on appeal. In order to preserve an
issue for appeal, it must be raised to and ruled upon by the
trial court."); *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505,
510–11, 598 S.E.2d 712, 715 (2004) ("It is well settled that, but
for a very few exceptional circumstances, an appellate court
cannot address an issue unless it was raised to and ruled upon
by the trial court.").

## B. Ice

Hall argues the master's finding that it was responsible for
$1,874.50 in ice charges was not supported by the evidence.
Hardaway argues this issue is not preserved. At oral argu-
ment, Hardaway alternately argued that it is irrelevant that
its original contract with Santee Cooper was later altered to

---

1. Hall further contended in its brief that even if the contract was not
governed by the U.C.C., Hardaway was estopped from objecting to the
specifications in the purchase order and pour specifications. However,
at the oral argument of this case, Hall's attorney informed this court
that it was specifically waiving its estoppel argument and was proceed-
ing solely on the U.C.C. argument. Thus, we need only address the
U.C.C. argument.

disallow ice charges because Hall sent Hardaway a fax adopting the original contract between Hardaway and Santee Cooper. We agree with Hall.

 The elements required for formation of a contract are an offer, acceptance, and valuable consideration. *Sauner v. Pub. Serv. Auth. of S.C.,* 354 S.C. 397, 406, 581 S.E.2d 161, 166 (2003). In order for a contract to arise, there must be a meeting of the minds of the parties involved with regard to all essential and material terms of the agreement. *Player v. Chandler,* 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989) ("[I]n order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement."); *Rushing v. McKinney,* 370 S.C. 280, 290, 633 S.E.2d 917, 922 (Ct.App. 2006) (holding that for a contract to arise, there must be a meeting of the minds of the parties involved). Generally, a third person not in privity of contract with the contracting parties does not have a right to enforce the contract. *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 445, 494 S.E.2d 827, 833 (Ct.App.1997). "However, if a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person." *Bob Hammond Constr. Co. v. Banks Constr. Co.,* 312 S.C. 422, 424, 440 S.E.2d 890, 891 (Ct.App.1994).

 We first address Hardaway's argument that this issue is not preserved. Hardaway admits in its brief that Hall raised the ice issue below. However, Hardaway argues the master failed to address these specific arguments in its order. In fact, the master reviewed the evidence and the arguments of both parties and determined that Hardaway was entitled to charge for ice based on the first contract and the fax between the parties. Because Hall raised the issue of whether Hardaway was entitled to charge for ice and the master determined Hardaway was entitled to do so, the issue was raised to and ruled upon by the master. Accordingly, the issue is preserved for appellate review.[2] *Staubes v. City of Folly Beach,* 339 S.C.

---

**2.** Hardaway also asserted for the first time at oral argument that the ice issue was not preserved for review because Hall's U.C.C. and estoppel

406, 412, 529 S.E.2d 543, 546 (2000) (holding that matters must be raised to and ruled upon by the trial court in order for the matter to be preserved for appellate review).

■ On the merits, this case presents the situation where Santee Cooper contracted with both Hall and Hardaway for services related to the construction of the power plant, but where neither Hall nor Hardaway contracted with each other. The master found that Hall was the third party beneficiary of the contract between Hardaway and Santee Cooper. This finding is unappealed, and thus, it is the law of the case. *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997) (holding that an unchallenged ruling, right or wrong, is the law of the case).

With that understanding in mind, we believe the evidence does not support the master's finding that Hardaway was entitled to charge Hall for ice. The original contract with Santee Cooper provided that Hardaway was responsible for "[i]ce making and cooling equipment for temperature control during hot weather concrete placement" and that Hardaway could bill Hall for "supplemental ice" as necessary for cooling the concrete. Hall faxed a letter to Hardaway indicating it accepted the rates and terms of Hardaway's contract with Santee Cooper. However, Hardaway's contract with Santee Cooper was later amended to disallow ice charges. A Santee Cooper employee testified at trial that the contract was amended so that Santee Cooper would pay Hardaway a lump sum to provide all the cooling equipment including supplemental ice. Hardaway also sent a letter to the project manager indicating that Hardaway would provide the cooling system and that the "the cost for supplemental ice, if required, is also included." The record also includes an email from the project manager to Hardaway stating that Hardaway was responsible for all the cooling equipment, including supplemental ice. Because Hall was the third-party beneficiary of Hardaway's

arguments were not ruled upon by the trial judge and constitute the "only basis for appeal." Although Hall raises U.C.C. and estoppel arguments with regard to pour specifications in its brief, it is clear from the separate ice argument that Hall is only referring to the wording of the underlying contracts. The contract matter was ruled upon by the master, and it is preserved for our review.

modified contract with Santee Cooper, Hardaway was not entitled to charge Hall for ice.

Accordingly, there was no substantial evidence to support the master's finding that Hardaway was entitled to charge Hall $1,874.50 for the provision of ice, and Hardaway's award shall be modified to reduce it by this amount.

## II. Attorney's Fees

### A. Amending Complaint

 Hall contends the master erred by allowing Hardaway to amend its complaint to add a claim for attorney's fees under section 27–1–15 of the South Carolina Code (1991). We disagree.

 A party normally may amend his pleadings once as a matter of course within thirty days of the time a responsive pleading has been served. Thereafter, however, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires and does not prejudice any other party." Rule 15, SCRCP. A motion to amend is addressed to the trial court's sound discretion and the burden of establishing prejudice rests on the party opposing the motion. *Harvey v. Strickland,* 350 S.C. 303, 313, 566 S.E.2d 529, 535 (2002). "In considering potential prejudice to the opposing party, the court should consider whether the opposing party 'has had the opportunity to prepare for the issue now being raised formally.'" *Soil & Material Eng'rs, Inc. v. Folly Assocs.,* 293 S.C. 498, 501, 361 S.E.2d 779, 781 (Ct.App. 1987) (quoting H. Lightsey & J. Flanagan, *South Carolina Civil Procedure* at 291 (1985)).

Hall admitted knowing of Hardaway's intention to seek attorney's fees under section 27–1–515 two weeks before trial began. Hardaway contends Hall had more notice than two weeks, because Hardaway sent letters to Hall informing it of its intention to assert the section on June 27, 2005, and the trial did not actually begin until August 29, 2005.[3] The master noted that Hall ably argued two motions on the motion to amend and even presented the master with the only case

---

3. The actual letters are not included in the record.

substantively discussing the attorney's fee statute. Accordingly, Hall did not demonstrate prejudice, and the master did not abuse his discretion in allowing Hardaway to amend its complaint.

## B. Denial of Motion to Dismiss

Hall asserts the master erred in denying Hall's Rule 41(b), SCRCP, motion to dismiss the claim for attorney's fees. We disagree.

Rule 41(b), SCRCP, provides:

After the plaintiff in an action tried by the court without a jury has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

The court as trier of the facts may then determine them and render judgment against the plaintiff *or may decline to render any judgment until the close of all the evidence.* If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

(emphasis added).

Hall argues the master erred in waiting until the close of all evidence to decide the motion because Hardaway did not present any evidence regarding an investigation. As Rule 41(b) specifically states, a court may wait until the close of evidence to render judgment. Because of the unusual manner in which the parties chose to present evidence in order to have a more efficient trial, the master chose to wait. Accordingly, the master did not err in waiting until the close of evidence to rule on the motion. The master determined that Hardaway met its burden of showing Hall had not conducted a fair and reasonable investigation because Hall fraudulently, and in bad faith, generated a list of back charges. The evidence supports

the master's finding that Hall did not conduct a fair and reasonable investigation. Accordingly, the master did not err in denying Hall's motion to dismiss.

## C. Fair and Reasonable Investigation

Hall argues the master erred in awarding attorney's fees under section 27–1–15. Hall contends it conducted a fair and reasonable investigation before withholding payment. We disagree.

■ This section provides:

Whenever a contractor, laborer, design professional, or materials supplier has expended labor, services, or materials under contract for the improvement of real property, and where due and just demand has been made by certified or registered mail for payment for the labor, services, or materials under the terms of any regulation, undertaking, or statute, it is the duty of the person upon whom the claim is made to make a reasonable and fair investigation of the merits of the claim and to pay it, or whatever portion of it is determined as valid, within forty-five days from the date of mailing the demand. If the person fails to make a fair investigation or otherwise unreasonably refuses to pay the claim or proper portion, he is liable for reasonable attorney's fees and interest at the judgment rate from the date of the demand.

S.C.Code Ann. § 27–1–15 (1991). The party seeking an award of attorney's fees and interest under the statute has the initial burden of presenting prima facie evidence that the opposing party did not make a fair and reasonable investigation. *Moore Elec. Supply, Inc. v. Ward,* 316 S.C. 367, 374–75, 450 S.E.2d 96, 100 (Ct.App.1994). Whether a party's steps taken were "reasonable and fair" is a question of fact. *Id.*

■ The master determined not only had Hall not made a fair and reasonable investigation, it further "intentionally refused to pay [Hardaway] its rightful charges in contravention of the agreement between the parties." In support of this finding, the master cited: (1) Hall's admissions regarding the amount of concrete delivered; (2) Hall's admissions regarding amount of offsetting overtime; and (3) Hall's attempts to vary the terms of the contract after the project was completed.

We find the evidence in the record supports the master's finding that Hall acted in bad faith and did not make a fair and reasonable investigation.

### D. Amount of Attorney's Fees

Hall argues the master erred in determining the amount of attorney's fees. We agree in part.

Generally, attorney's fees are not recoverable unless authorized by contract or statute. *Baron Data Sys., Inc. v. Loter*, 297 S.C. 382, 383, 377 S.E.2d 296, 297 (1989). "The determination of whether statutory attorney fees should be awarded is treated as one in equity." *Kilcawley v. Kilcawley*, 312 S.C. 425, 427, 440 S.E.2d 892, 893 (Ct.App.1994). Accordingly, in reviewing the award, we may take our own view of the preponderance of the evidence. *Kelly v. Peeples*, 294 S.C. 63, 65, 362 S.E.2d 636, 637 (1987). "Even where this court may find facts in accordance with its own view of the preponderance of the evidence, we are not required to disregard the factual findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility and demeanor." *Kilcawley*, 312 S.C. at 427, 440 S.E.2d at 893.

"Our case law and court rules make clear that when a contract or statute authorizes an award of attorney's fees, the trial court must make specific findings of fact on the record for each of the required factors to be considered." *Griffith v. Griffith*, 332 S.C. 630, 646, 506 S.E.2d 526, 534–35 (Ct.App.1998). The factors a trial court should consider in determining reasonable attorney's fees are:

(1) nature, extent, and difficulty of the legal services rendered; (2) time and labor devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) fee customarily charged in the locality for similar services; and (6) beneficial results obtained.

*Blumberg v. Nealco, Inc.*, 310 S.C. 492, 494, 427 S.E.2d 659, 660 (1993). "[A]bsent sufficient evidentiary support on the record for each factor, the award should be reversed and the issue remanded for the trial court to make specific findings of fact." *Id.* at 494, 427 S.E.2d at 661.

Hall raises several issues regarding the amount of attorney's fees. We will address Hall's specific reasons why the master erred in awarding attorney's fees below.

### 1. Fees Relating to Counterclaims

Hall maintains that Hardaway's fees for defending Hall's counterclaims are not recoverable. We disagree.

In *Charleston Lumber Co. v. Miller Housing Corp.*, 318 S.C. 471, 483, 458 S.E.2d 431, 438–39 (Ct.App.1995), the defendant alleged the amount of the award of attorney's fees was improper because some of the fees were attributable to defending counterclaims and some were previously awarded in the initial action. This court found the distinction to be "specious." *Id.* at 484, 458 S.E.2d at 439. We held "[t]he trial court clearly found that the facts and issues surrounding the promissory note were intertwined with those of the counterclaims which required extensive discovery and transformed a normally uncomplicated action ... into complex litigation." *Id.* at 483–84, 458 S.E.2d at 439. Further, this court agreed with the trial court and found the trial court did not abuse its discretion in awarding attorney's fees for the counterclaim. *Id.* at 484, 458 S.E.2d at 439.

In the case at hand, the issues presented in Hall's counterclaims were intertwined with Hardaway's causes of action. Accordingly, the master did not abuse his discretion in allowing Hardaway to recover attorney's fees for defending Hall's counterclaims. *See Am. Fed. Bank, FSB v. No. One Main Joint Venture*, 321 S.C. 169, 175, 467 S.E.2d 439, 443 (1996) (holding that attorney's fees could be awarded for defending counterclaims where the counterclaims were intertwined with the issue of the bank's ability to proceed on a note).

### 2. Reasonable Fees

Hall argues the attorney's fees the master awarded are not reasonable and only reasonable fees may be recovered. We disagree.

Hardaway's attorney submitted an affidavit requesting $53,592.56 in attorney's fees, including $5,377.50 related to the motion for sanctions. The master awarded all of the fees Hardaway's attorney stated in his affidavit that he incurred.

The master issued a twenty-two page order on the determination of attorney's fees. While the master did a thorough job of determining whether Hardaway had met its burden under the statute authorizing fees, the order only contains one paragraph on the actual amount of attorney's fees. This paragraph is the last paragraph in the order but is the first time the actual amount of attorney's fees is addressed. The master awarded Hardaway attorney's fees in the amount of $53,592.26, specifically finding:

> This amount includes $48,215.06 for the litigation of the ... case, including trial preparation fees and costs on two separate occasions. In addition, the total amount includes attorney's fees $5,377.50 for fees and costs associated with a motion for sanctions which [the master] previously denied. Although, [the master] denied the motion for sanctions, [the master] hereby found that [Hardaway] incurred those attorney's fees and costs in the course of the litigation, and those fees and costs are properly payable.

While the master was required to make findings with regard to all six factors in *Blumberg* in awarding attorney's fees, Hall focuses only on the necessary "time and labor" factor and the "beneficial results obtained" factor in its argument. The master's order did not make specific findings with regard to these to factors in the analysis. However, with the exception of the motion for sanctions and certain costs which we will discuss below, we can glean evidence from the record on these two factors that would support the master's award. *Seabrook Island Prop. Owners' Ass'n v. Berger,* 365 S.C. 234, 240, 616 S.E.2d 431, 435 (Ct.App.2005) ("On appeal an award of attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor.").

Accordingly, we find, except for the motion for sanctions, the record supports the master's award of attorney's fees to Hardaway.

### 3. Fees for Motion for Sanctions

■■■ Hall argues the master erred in awarding $5,377.50 in fees for the motion for sanctions because Hardaway lost the motion, and therefore, the fees were not recoverable. We agree.

Nothing in the record supports the master's award of attorney's fees for the motion for sanctions, which Hardaway lost. Hardaway's attorney's did not obtain beneficial results from this particular motion, and nothing in the master's order supports the reasonableness of this fee. Accordingly, we find the master erred in awarding $5,377.50 in attorney's fees for the lost sanctions motion. The attorney's fees award shall be reduced by that amount.

### 4. Fees for Repreparing for Trial

Hall contends that Hardaway's fees for repreparing for trial were not recoverable. We disagree.

We find no error in awarding attorney's fees for repreparing for trial. The trial occurred approximately two months after it was to originally begin, not simply a few days. This court finds it reasonable that counsel would need to refresh himself pending such a period of time.

### 5. Fees Limited to Evidence Presented at Trial

Hall maintains that the attorney's fees should have been limited to evidence presented at trial and the affidavit submitted after trial should not have been considered. We disagree.

Hall alleges Hardaway should be limited to the $35,762.17, the amount specified in its damages summary as its attorney's fees and costs "estimated through trial." However, on January 5, 2006, when the master reopened the matter to hold a hearing to determine attorney's fees, Hardaway's attorney submitted an affidavit stating that Hardaway incurred fees of $53,592.56 including attorney's fees of $5,377.50 for the motion for sanctions. The additional hearing on attorney's fees was not anticipated in the original estimation of attorney's fees. The revised estimate for attorney's fees included many charges for services after the trial, including researching and preparing the order.

"A judge may not, after all testimony has been taken, receive additional contested evidence without reopening the case." *Johnson v. Johnson,* 288 S.C. 270, 274, 341 S.E.2d 811, 814 (Ct.App.1986). However, in the case at hand, the case was already re-opened to hold a hearing on attorney's fees.

Hall had the opportunity to contest the affidavit and did. Although the charges were presented after the trial, we find it appropriate in the current situation to allow them.

### 6. Non–Attorney Services

Hall complains that $125 in charges allowed to Hardaway were unrecoverable. Specifically, Hall complains about the time spent: (1) copying depositions; (2) reorganizing case file; (3) faxing documents; (4) picking up attorneys and the owner of Hardaway; and (5) printing orders.[4] We disagree.

Initially, we address Hardaway's contention that because these charges were for the services of law clerk, "drs," Hall is arguing that all charges billed by law clerks are not allowed as attorney's fees. However, Hall only complains about five specific charges by "drs" and does not challenge any of the other charges by "drs." Thus, it does not appear that Hall is arguing that law clerk charges, in general, are unrecoverable as attorney's fees, and we decline to address this question.

In any event, we do not believe Hall preserved this argument for appellate review. Hall sent a memorandum to the master that, among other complaints, specifically raised the issue of the five charges for "drs" and whether the five specific charges were recoverable "non-attorney services." However, the master did not address this argument in the final attorney's fees order, and Hall did not file a Rule 59(e), SCRCP, motion for reconsideration of the matter. Because the matter was not ruled upon, it is not preserved for appellate review. *Staubes,* 339 S.C. at 412, 529 S.E.2d at 546 (holding that matters must be raised to and ruled upon by the trial court in order for the matter to be preserved for appellate review). Further, Hall does not cite to any supporting authority for its argument, rendering the issue abandoned on appeal. *Joubert v. South Carolina Dep't of Soc. Servs.,* 341 S.C. 176, 192–93, 534 S.E.2d 1, 9–10 (Ct.App.2000) (noting that the failure to provide argument or supporting authority for an issue renders it abandoned).

---

4. Hall specifically references $125 of fees charged for the services of "drs." Although nothing in the record indicates who "drs" is, Hardaway alleges that "drs" refers to its attorney's law clerk.

## CONCLUSION

The evidence in the record supports the master awarding judgment in favor of Hardaway and ordering Hall to pay the outstanding amount of $45,123.84 minus $1,874.50 for the provision of ice. The master correctly awarded attorney's fees. However, we find the master erred in awarding attorney's fees for the lost sanctions motion and reduce the attorney's fees award by $5,377.50. Accordingly, the order of the master is

**AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED.**

ANDERSON and HUFF, JJ., concur.