THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 MIA Funding,
 LLC, Respondent,
 v.
 P. Sizer both
 individually and as Trustee of Land Trust 112, Jerome Brunson, CityScape
 Corporation, Bureaus Investment Group #5, LLC, East Richland County Public
 Service District, Richland County Finance Department, The Winter Group, GTI
 Investments, Nathaniel Brunson, Jr., Wells Fargo Bank, N.A., Defendants,
 Of Whom Wells Fargo
 Bank, N.A., is the Appellant.
 
 
 

Appeal From Richland County
Joseph M. Strickland, Master-in-Equity

Unpublished Opinion No. 2010-UP-443
 Heard March 2, 2010  Filed October 14,
2010   

REMANDED

 
 
 
 Brendan P. Langendorfer, of Charleston, for Appellant.
 Weston Adams, III, C. Edward Rawl, Jr., and Helen F. Hiser, all of
 Columbia, for Respondent.
 
 
 

PER CURIAM: In
 this foreclosure action, Wells Fargo Bank, N.A., (Wells Fargo) challenges
 findings by the master-in-equity that (1) a purported assignment of its
 first-priority mortgage lien on the subject property was valid and enforceable
 and (2) the lien was capped at $12,531.  We
 remand this matter to the master for further proceedings.
FACTS AND PROCEDURAL HISTORY
On
 December 17, 1999, Nathaniel Brunson, Jr., executed a promissory note to First
 Union Mortgage Corporation (FUMC) for $67,000, plus yearly interest of 9.75
 percent.  "FUMC Loan No. 8784100" appeared on the face of the
 document.  Brunson also executed a mortgage on property located in Richland
 County to secure the note.  The mortgage was a first-priority lien on the
 subject property and was recorded on December 23, 1999, in deed book 371 at
 page 560.  On October 29, 2001, FUMC assigned the note and mortgage to Wells
 Fargo for valuable consideration.  The assignment was recorded on November 26,
 2001, in deed book 593 at page 1293.[1]  
Brunson purportedly
 executed another promissory note on December 17, 1999, the same date that he
 executed the FUMC note and mortgage.  This note was in favor of GTI Investments
 (GTI) for a credit line of $67,000, plus yearly interest of six percent.  "GTI
 Loan No. 2572881" appeared on the face of the document.  According to language
 in this note, if Brunson did not use the entire credit line within two years,
 the credit line would close and the balance then owing at that time would
 operate as a cap.  Although this note was purportedly secured by a mortgage on
 the subject property and there were boilerplate references to a mortgage in the
 note, no corresponding mortgage was introduced into evidence at trial.  Furthermore,
 the record does not include any evidence that either this note or any
 corresponding mortgage was ever recorded.
According to
 information recorded at the Richland County Register of Deeds on December 15,
 2003, Wells Fargo assigned its note and mortgage on the subject property to
 GTI.  According to the recorded document evidencing the assignment, Wells Fargo
 conveyed its interest to GTI on April 11, 2003, but the assignment had become
 effective on February 1, 2003.  The document also indicated that "Pete
 Wessinger" as "Vice President" acted on Wells Fargo's behalf in
 executing the assignment, which was in turn attested to by "Mark O'man"
 as secretary.  It further recited that consideration for the assignment was ten
 dollars "and other good valuable and sufficient consideration paid." 
 The only recording reference in the document is to deed book 371 at page 560, where
 the lien granted by Brunson to FUMC was recorded.
On April 2, 2004, Brunson executed a note to
 Greenlight Financial Services (Greenlight) for $90,000, plus yearly interest of
 8.1250 percent.  The note was secured by a mortgage dated April 2, 2004, on the
 same subject property.[2]
On
 April 2, 2004, Greenlight assigned its mortgage to MIA Funding, LLC (MIA).  The
 assignment was recorded March 23, 2006.[3] 
 It was MIA's understanding at the time of the assignment that it had acquired a
 first-loan priority position; however, it subsequently learned there was a
 senior lien on the property.  MIA received this information from an
 investigative summary report prepared at Greenlight's request by First American
 Credco.  The report is dated March 17, 2004, before MIA took the assignment
 from Greenlight; however, it is not clear when MIA received it.  
On September 9, 2005, Wells Fargo brought a
 foreclosure action against Brunson.  The action was dismissed on January 3,
 2006.  Neither the case file, which counsel sent in response to a request from
 this court, nor the present record on appeal indicates the reason for the
 dismissal.
On May 2, 2006, MIA Funding filed a lis pendens and
 summons and amended complaint in the present action for foreclosure of its
 mortgage.  Brunson filed an answer in which he asserted neither he nor "P.
 Sizer Land Trust" had any interest in the MIA mortgage, but acknowledged
 an obligation on the first mortgage with Wells Fargo for $67,000.  In its
 responsive pleadings, Wells Fargo maintained it had a first mortgage on the
 subject property and denied its mortgage had been capped.  It attached copies
 of the FUMC note, a copy of the closing statement, and a copy of the mortgage
 as exhibits to its answer.[4]
On May 21 and 22,
 2008, the Richland County Master-in-Equity conducted a foreclosure hearing in
 the matter.  The record on appeal contains testimony from Brunson and Michael
 O'Donovan Murphy, III, an account manager for a servicing company hired by MIA. 
In
 addition to identifying MIA's note and mortgage, Murphy discussed the
 circumstances surrounding MIA's discovery that there was a prior mortgage on
 the subject property.  Based on Murphy's identification, a note that GTI provided
 to Greenlight was entered into evidence.  Murphy also identified the investigative
 summary report prepared in 2004 and testified that the report showed the
 balance due on the GTI note was $12,530.  The note, however, on its face states
 that the lender is GTI, designates the obligation as GTI Loan No. 2572881, and
 is devoid of references to the number that FUMC assigned to the loan that it
 had made to Brunson.[5]
Brunson,
 who appeared pro se, was called by counsel for MIA.  He denied ever having a credit
 relationship with GTI and stated he only borrowed money from Wells Fargo.  He
 also denied signing MIA's note and mortgage; however, the master rejected his
 contention, citing extensive evidence presented by MIA that Brunson executed
 the note, mortgage, and related loan documentation.
On June 11, 2008,
 the master issued an order and judgment of foreclosure.  The master ruled the
 foreclosure sale was subject to, among other items, "the senior lien of
 that mortgage first recorded by First Union Mortgage Corporation in the
 original principal amount of $67,000.00, dated December 17, 1999, and recorded
 in said RMC's office on December 23, 1999, . . . but said lien shall be capped
 at the amount of $12,530.00"  As to the identity of the senior lien holder,
 however, the master expressly declined to determine the present holder of
 "that first mortgage given by First Union Mortgage Corporation in the
 original principal amount of $67,000.00 dated December 17, 1999 . . . ."
Wells Fargo moved
 to alter or amend the judgment, and the master heard the motion on June 27,
 2008.  At the hearing, Wells Fargo submitted two affidavits.  In the first
 affidavit, Mark Oman, a Senior Executive Vice President at Wells Fargo, stated
 (1) the signature purporting to attest the assignment was not his, (2) he did
 not witness the execution of the assignment by any agent or employee of Wells
 Fargo, (3) he never authorized anyone else at Wells Fargo to execute the GTI
 assignment on his behalf or on behalf of Wells Fargo, (4) he had never been
 "Secretary" of Wells Fargo as indicated on the purported assignment,
 and (5) no one spelling his name as "Pete Wessinger" had ever been a
 Vice President of Wells Fargo.  In the second affidavit, Lorrie Phelps, another
 vice president at Wells Fargo Bank, stated that Wells Fargo acquired its
 interest in the subject property through an assignment from FUMC dated October
 29, 2001, and recorded November 26, 2001, in deed book 593 at page 1293. 
 Phelps also asserted that Wells Fargo never transferred the note and mortgage. 
 Over MIA's objection, the master admitted the affidavits and a letter from the
 law office representing Wells Fargo showing the payoff amount claimed by Wells
 Fargo on its loan.  Nevertheless, the master ruled from the bench that he was
 denying Wells Fargo's motion to alter or amend, and a written order to this
 effect was filed July 2, 2008.  Wells Fargo then filed this appeal.
STANDARD OF REVIEW
A
 mortgage foreclosure is an action in equity.  Hayne Fed. Credit Union v.
 Bailey, 327 S.C. 242, 248, 489 S.E.2d 472, 475 (1997).  For cases heard by
 a master-in-equity who enters a final judgment, an appellate court may
 determine facts according to its own view of the preponderance of the evidence;
 however, it does not disregard the findings of the master, "who saw and
 heard the witnesses and was in a better position to evaluate their
 credibility."  Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237,
 391 S.E.2d 538, 543 (1989).
LAW/ANALYSIS
1. We first address an argument by
 MIA Funding that Wells Fargo lacks standing to bring this appeal because it is
 no longer the record lien holder.  We hold Wells Fargo still has a stake in
 this litigation and standing to pursue this appeal.  See Ex parte
 Morris, 367 S.C. 56, 62, 624 S.E.2d 649, 652 (2006) ("As a general
 rule, to have standing, a litigant must have a personal stake in the subject
 matter of the litigation.").  Here, the master expressly declined to
 identify the present holder of the mortgage that Brunson granted to FUMC in
 1999.  Even more important, the question of whether Wells Fargo did in fact
 assign its lien is one of the questions presented in this appeal.
2. Wells Fargo contends there was
 insufficient evidence supporting the master's finding that the purported
 assignment of its interest in the subject property to GTI was valid and
 enforceable.  We remand this issue to the master for additional proceedings.  
The
 master found Wells Fargo offered insufficient evidence to support its proffered
 position that the purported assignment of its interest to GTI was a forgery.  At
 the hearing on Wells Fargo's motion to alter or amend, the master admitted
 affidavits attesting that (1) no one from Wells Fargo authorized the assignment
 and (2) the signatures on the instrument were not genuine, but he ultimately
 declined to amend his prior ruling.  We recognize MIA objected to these
 affidavits; however, the master's decision to admit them was tantamount to his reopening
 the matter, a discretionary call that this court will disturb only in
 exceptional cases.  See Brenco v. S.C. Dep't of Transp., 377 S.C.
 124, 127, 659 S.E.2d 167, 169 (2008) ("The decision whether to reopen a
 record for additional evidence is within the trial court's sound discretion and
 will not be disturbed on appeal absent an abuse of that discretion."); Hardaway
 Concrete Co. v. Hall Contracting Corp., 374 S.C. 216, 233, 647 S.E.2d 488,
 497 (Ct. App. 2007) (" 'A judge may not, after all testimony has been
 taken, receive additional contested evidence without reopening the case.'
 ") (quoting Johnson v. Johnson, 288 S.C. 270, 274, 341 S.E.2d 811,
 814 (Ct. App. 1986)).  
Nevertheless,
 two deficiencies remain in the proceedings that prevent a determination
 regarding whether the purported assignment from Wells Fargo to GTI was valid
 and enforceable.  First, the master explicitly declined to make any finding as
 to the identity of the present holder of the FUMC note and mortgage.  Second,
 considering the posture of the case in view of the admission of additional
 evidence, MIA should have had the opportunity to respond to the affidavits
 after they were admitted.  Cf. Brown v. La France Indus., 286
 S.C. 319, 325, 333 S.E.2d 348, 351 (Ct. App. 1985) (holding in a workers'
 compensation case that the single commissioner did not err in reopening a case
 for additional testimony from the claimants and noting the employer "was
 expressly authorized to present rebuttal testimony and failed to do so"). 
 We therefore remand this issue to the master for further proceedings consistent
 with this opinion.
3. Finally, Wells Fargo alleges error
 in the finding by the master that the only lien that was determined to have
 priority over MIA's encumbrance on the subject property had been capped at
 $12,530.  We remand this matter for further proceedings.
According
 to the appealed order, "the note corresponding to the mortgage held by
 GTI, a copy of which is part of the Court's record, provided that if the full
 credit line of said note was not used within the first two years, the amount
 used/ending balance would become a cap or limit on the amount owed and the
 credit line would then discontinue."  The master also found the amount
 used, i.e., the ending balance, was capped at $12,530.
As
 we have noted, the record indicates Brunson executed two notes encumbering the
 subject property on December 17, 1999.  FUMC held one note and assigned that
 note to Wells Fargo in 2001.  It is undisputed that this note had no cap
 provision and that the mortgage securing this note was recorded several days
 after it was executed.  According to public records, although disputed by Wells
 Fargo, Wells Fargo assigned this note to GTI in 2003, and the recorded
 assignment references the deed book and page number of the mortgage that
 Brunson had granted to FUMC.  Regardless of whether the 2003 assignment was
 valid, the record suggests the FUMC note and mortgage should have been
 recognized as having priority over any interest held by MIA.  
The
 second note, which was offered into evidence by MIA, contained the cap
 provision that, according to the master, limited the amount owed.  There is no
 evidence, either in the note itself or elsewhere in the record, that GTI
 obtained this second note through an assignment from Wells Fargo; rather, it
 was executed by Brunson directly to GTI.  Furthermore, there is no evidence
 that this note was ever recorded.  It is difficult to reconcile what appears on
 the face of this second note with the master's finding that it represented the
 same interest that Wells Fargo allegedly assigned to GTI.  Because we have
 remanded the issue of the validity of the GTI assignment to the master, we
 believe that a remand of this issue is appropriate as well. 
CONCLUSION
We hold Wells Fargo
 has standing to pursue this appeal and remand this case to the master for the
 necessary findings pursuant Rule 71, SCRCP.[6]
REMANDED.
FEW,
 C.J., HUFF and THOMAS, JJ., concur.

[1]  The master's order states the assignment took place
 February 28, 2001; however, an affidavit included in the record indicates
 November 26, 2001, as the date of the assignment.  The assignment document does
 not appear in the record.  The loan number on the mortgage matches that
 appearing in the note.
[2]  Exhibit A of the mortgage document suggests Brunson
 was record owner of the property by virtue of a conveyance from "Trustee
 P. Sizer of Land Trust 112" by deed recorded December 1, 2002, and
 recorded December 4, 2003.  According to the master's order, by deed dated
 December 2, 2002, and recorded May 19, 2004, Brunson conveyed the subject
 property back to Trustee P. Sizer.  "P. Sizer," according to Brunson,
 is Brunson's wife.
[3]  The only documentation of these transactions in the
 record on appeal is in the master's order, which also noted that Greenlight had
 also assigned the mortgage to another entity, but the assignment was recorded
 in error.  
[4]   According to MIA's amended complaint, Wells Fargo
 was made a party by virtue of its prior foreclosure action on the subject
 property and because it had alleged in its complaint in the prior action that
 "it has interest in the subject property pursuant to an unrecorded
 assignment from GTI investments."
[5]  In its brief and during oral argument, counsel for
 MIA argued the note to FUMC was only attached to Wells Fargo's pleadings and
 therefore could not be viewed as evidence supporting any findings of fact.  We
 disagree.  See Rule 201(b)(2) and (c), SCRE (giving courts discretion to
 take judicial notice of facts "capable of accurate and ready determination
 by resort to sources whose accuracy cannot reasonably be questioned"). 
 Here, the FUMC note was a recorded document, and no allegation has been raised
 in this appeal that the copy attached to Wells Fargo's answer was different
 from the document that was recorded at the Register of Deeds.
[6]  The South Carolina Rules of Civil Procedure require
 that the presiding judge or master in a foreclosure "compute the amounts
 due the plaintiff and any other claimants, which amounts when determined
 shall be the total debt due to each."  Rule 71, SCRCP.