2318

CHARLESTON LUMBER COMPANY INC., Respondent v. MILLER
HOUSING CORPORATION, and Robert E. Miller, Jr., Appellants.

(458 S.E. (2d) 431)

Court of Appeals

*Edward J. Westbrook*, of *Ness, Motley, Loadholt, Richardson & Poole*, Charleston, *for appellants.*

*Steven L. Smith* and *Joe S. Dusenbury, Jr.*, both of *Smith, Collings & Dusenbury*, N. Charleston, *for respondent.*

Heard Dec. 6, 1994.

Decided Mar. 13, 1995.

CURETON, Judge:

Respondent, Charleston Lumber Company, Inc. (Charleston Lumber), brought six lawsuits against the appellants, Miller Housing Corporation and Robert E. Miller, Jr. (the Millers), seeking the recovery of money allegedly due on an open account, the collection of a promissory note, and the foreclosure of a mortgage on five separate lots.[1] In its answer,

---

[1] The mortgage foreclosure causes of action were rendered moot when the first mortgage holder foreclosed and sold the subject properties.

the Millers denied liability and asserted two counterclaims for fraud, a counterclaim for violation of the Unfair Trade Practices Act (UTPA), and an affirmative defense of negligence. Charleston Lumber then moved for summary judgment on the grounds that the Millers had suffered no damages pursuant to their fraud counterclaim, and the Millers had no basis for a negligence cause of action. The Millers likewise moved for summary judgment on the open account on the ground that Charleston Lumber did not have a personal guarantee from Robert E. Miller, Jr. regarding the alleged open account balance. On June 28, 1992, the trial court issued an order granting Charleston Lumber's motion for summary judgment against the Millers on the first counterclaim for fraud and on the negligence counterclaim.[2] In the same order, the court denied the Millers' motion for summary judgment on the open account, but allowed the Millers to amend their counterclaims to allege a setoff, general denial, causes of action for libel and slander, and violation of the UTPA.

Based on this order, the Millers amended their answer and counterclaims to include two counterclaims for violation of the UTPA, two setoffs, and one counterclaim for libel and slander.[3] On September 9, 1993, the trial court granted Charleston Lumber's second motion for summary judgment for the balance due on the promissory note and against the Millers on their setoffs and libel and slander counterclaims.

The remaining issues in the case, Charleston Lumber's suit on the open account and the Millers' two counterclaims for violation of the UTPA, were tried before a jury. Two sets of in-

---

[2] In his order, the court stated that "[Charleston Lumber's] motion for summary judgment addressed three (3) of the five (5) causes of action raised by [Miller] in his counterclaim. The three causes of action in question where [sic] negligence, fraud, and violation of the Unfair Trade Practices Act."

[3] Although one of the Millers' previous counterclaims for fraud was dismissed by the June 28, 1992 Order, the other counterclaim for fraud was not addressed in this Order, and in thier amended answer, the Millers did not allege a counterclaim for fraud. In the amended answer, however, the Millers asserted two counterclaims for violation of the UTPA. The first UTPA counterclaim alleged that Charleston Lumber engaged in a deceptive bidding scheme whereby it would bid or quote a certain price, and after getting the job, would later bill the Millers for a higher amount. The second UTPA counterclaim alleged that Charleston Lumber reported confidential information to other suppliers concerning the Millers' credit history and this information was false.

terrogatories were submitted to the jury, the first asked the jury to determine the balance of the open account and whether Miller Housing Corporation, Robert E. Miller, Jr. or both were liable for it. The second set of interrogatories asked the jury to determine whether Charleston Lumber committed a violation of the UTPA, and if so, whether the Millers suffered actual damages as a proximate result of the unfair or deceptive acts.

The jury found for Charleston Lumber against Miller Housing on the open account, which is determined to be $24,884.36. Although the jury found that Charleston Lumber's action constituted "an unfair or deceptive act," it awarded the Millers no damages because it concluded the Millers suffered no actual damages as a proximate result of the unfair and deceptive acts of Charleston Lumber. The Millers, nevertheless, moved for an award of attorney fees pursuant to the attorney's fee provision in the UTPA. Holding that attorney fees cannot be recovered unless the claimant has been awarded actual or nominal damages, the trial court denied the Millers' request for attorney fees, but awarded Charleston Lumber attorney's fees as provided for in the promissory note. The Millers appeal. We affirm in part, reverse in part, modify in part and remand.

## FACTS

Charleston Lumber sells construction materials. Miller Housing was in the business of building homes and Robert E. Miller, Jr. was its Vice-President. Miller Housing began doing business with Charleston Lumber in the late 1970's. As is customary in the construction business, the Millers requested quotes form Charleston Lumber and other suppliers on homes they were building. If the Millers accepted Charleston Lumber's quote, Charleston Lumber would ship the materials and invoice them. Around 1987-88 Pelican Company of Conway, S.C. took over Charleston Lumber. After the takeover, the Millers began noticing an increase in errors in Charleston Lumber's invoices, all in Charleston Lumber's favor. Specifically, Charleston Lumber's invoiced price of an item would be higher than the price it had quoted in its bid. As a result of these error, the Millers' personnel spent much more time than usual checking Charleston Lumber's invoices against its

quotes, correcting errors, and notifying Charleston Lumber of the mistakes.

After the Millers pointed out the mistakes, Charleston Lumber would agree to issue the Millers "credits" against the next month's statement. Charleston Lumber, however, often delayed or even failed to issue the promised credits. The Millers claim Charleston Lumber's actions were not inadvertent, but, instead, a concerted effort by Charleston Lumber's executives to intentionally delay giving the Millers credits to avoid showing an adverse impact on their sales in any one month.

Since each incorrect monthly statement built on the last, the Millers claimed Charleston Lumber's practice of bidding low, billing high, and delaying credits created an accounting nightmare, and had a significant financial impact on them. In fact, Charleston Lumber's general manager was unable to reconcile the two examples of Charleston Lumber's monthly statements that the Millers' counsel showed him at trial. One of Charleston Lumber's own salesmen admitted that their executives met and agreed to delay issuing the credits.

According to the Millers, by December 1989, the account was so confused that they were unable to reconcile the Charleston Lumber statements with their own records. Charleston Lumber contended that the Millers owed it $149,000, this amount including all purchases, credits, and payments on the account up to December 31, 1989. In February 1990, Charleston Lumber presented Mr. Miller with a personal note for $149,000, representing the amount owed on the Millers' account.[4] On February 15, 1990, Mr. Miller executed and delivered the promissory note on behalf of himself and Miller Housing in the amount of $149,000 to Charleston Lumber. As security for this Note, Mr. Miller also executed a blanket mortgage on several parcels of real property.

By August 1990, the Millers had paid the note down to around $65,000 to $74,000. Mr. Miller offered to pay off the entire note in order to release the mortgage, but Charleston Lumber refused to accept the payment unless Mr. Miller

---

[4] The Millers argue the correct amount due on the open account at that time was only $113,338.89.

agreed to be personally responsible for another outstanding open account in the amount of $48,000.[5] Mr. Miller refused.

Charleston Lumber then filed this suit to foreclose on the mortgage on five pieces of property which secured the $149,000 note. Charleston Lumber alleged the note to be due and owing in the amount of $74,000. Charleston Lumber also filed suit against the Millers to receive the $28,042.20 outstanding balance on an open account which Mr. Miller allegedly personally guaranteed in June 1983.

The Millers appeal the trial judge's orders for summary judgment, his refusal to award them attorney fees based on the UTPA, and the awarding of attorney fees to Charleston Lumber.

## I.

We first note that Charleston Lumber maintains this appeal should be dismissed on jurisdictional grounds. Charleston Lumber asserts the trial court should be affirmed on all issues because the Millers have not appealed one of the cases and therefore should be bound by the trial court's ruling in the unappealed case.

Charleston Lumber brought five lawsuits (Case Nos. 90-CP-10-5028 through 90-CP-10-5032) to enforce the collection of the $149,000 promissory note. The five suits were identical except for the differing property descriptions. They all sought to collect the balance due on a single note. The Millers submitted identical answers, counterclaims, and amended answers to the five suits. Although the trial court never consolidated the five cases, the judge signed a single order for all of them.

The Millers filed its first notice of appeal on December 28, 1993, which listed all the cases except Case No. 90-CP-10-5032. The Millers' amended notice of intent to appeal also neglected to mention this case. Charleston Lumber argues since all five of the complaints sought a single recovery and all of the Millers' counterclaims sought a single recovery, the failure to appeal one of the cases is a fatal error. We disagree.

---

[5] In September 1990, Charleston Lumber alleged the open account to be delinquent in the amount of $48,000. In its complaint filed one month later, Charleston Lumber alleged an outstanding balance of approximately $28,042.40; and at trial in September 1993, Charleston Lumber alleged an outstanding balance of approximately $24,844.39.

Clerical errors in a notice of appeal do not destroy the appeal. *Moody v. Dickinson*, 54 S.C. 526, 32 S.E. 563 (1899) (the court may properly allow an appellant to correct a mere clerical error in the title to his notice of intention to appeal where there is no prejudice to the appellee). We find this error was clerical in nature, and does not warrant a dismissal of the appeal. Charleston Lumber does not allege any prejudice as a result of the omission, and there can be no doubt that Charleston Lumber had notice that the Millers had appealed all cases. Charleston Lumber's effort to take advantage of a mere clerical error by which they were in no way prejudiced or misled is rejected. Both notices of appeal clearly state, "Robert E. Miller, Jr. and Miller Housing Corporation appeal from the following Orders and/or Judgments of The Honorable Circuit Court." Thereafter, each of the orders is described and attached. We therefore find this court has jurisdiction to hear this appeal.

## II.

As relates to the merits of this case, the Millers first argue the trial court erred in granting summary judgment against them on the $149,000 note because they claim the note was procured as part of a misrepresentation scheme.

Rule 56 of the SCRCP provides that a trial judge may grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In addition, it must be shown that further inquiry into the facts is not needed to clarify the application of the law. *Butts v. AVX Corp.*, 292 S.C. 256, 355 S.E. (2d) 876 (Ct. App. 1987). In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the nonmoving party. *Cafe Assoc., Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991).

A note by its terms is an unconditional promise to pay money and parol evidence may not be introduced to vary its terms or otherwise inject conditions not apparent on its face. *Ray v. South Carolina Nat'l Bank Inc.*, 281 S.C. 170, 314 S.E. (2d) 359 (Ct. App. 1984). The execution of a note in payment of an open account operates to cut off all defenses to the account to which the maker then had knowledge

where it is clear from the record the person knew or should have known the operative facts upon which the note was based. *Berry v. Atlas Metals, Inc.*, 152 Ga. App. 437, 263 S.E. (2d) 179 (1979).

The Millers asserted fraud by Charleston Lumber as a defense to the $149,000 note. In South Carolina, the party bringing an action for fraud or deceit, based on a misrepresentation, must prove the following by clear, cogent and convincing evidence:

> (1) a representative: (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*First State Sav. and Loan v. Phelps*, 299 S.C. 441, 385 S.E. (2d) 821 (1989); *M.B. Kahn Const. Co. v. South Carolina Nat'l Bank of Charleston*, 275 S.C. 381, 271 S.E. (2d) 414 (1980).

The Millers admit the mortgage and note were duly signed, witnessed and probated. Nevertheless, they assert the amount of the note was incorrect because they were overcharged for certain materials and not promptly credited. However, the record reveals that prior to signing the note, the Millers had all the information necessary to compute what they assert to be the correct balance. The Millers therefore cannot claim ignorance of the falsity of Charleston Lumber's representation that they owed $149,000.

Furthermore, the Millers were not reasonable in relying on Charleston Lumber's representations. Whether reliance is justified in a given situation requires an evaluation of the circumstances involved, including the positions and relations of the parties. *Elders v. Parker*, 286 S.C. 228, 332 S.E. (2d) 563 (Ct. App. 1985). The Millers began noticing an increase in errors in their account with Charleston Lumber as early as 1987. Charleston Lumber did not present Mr. Miller with the note until February 15, 1990. Mr. Miller testified that Charleston Lumber was exercising leverage over him and threatening to withhold critical materials if he refused to sign the note. Thus, by his own testimony, Miller

was not reasonable in relying on Charleston Lumber's representations. The time to have undertaken an examination of the amount of the note was before Mr. Miller signed it. We therefore affirm the trial court's summary judgment order in regards to the Millers' liability on the note.

### III.

The Millers also claim the trial court erred in dismissing their counterclaim for fraud. We agree, and reverse the trial court's order of summary judgment against the Millers on their counterclaim for fraud. The trial court incorrectly held as a matter of law that the Millers failed to show the first and last elements of fraud, i.e., a representation and damages proximately caused by the representation.

It is well settled in South Carolina that where one ▮▮▮▮ promises to do a certain thing, having at the time no intention of keeping the agreement, it is a fraudulent misrepresentation of fact, and actionable as such. *Davis v. Upton,* 250 S.C. 288, 157 S.E. (2d) 567 (1967). In *Thomas & Howard v. Fowler,* 225 S.C. 354, 82 S.E. (2d) 454 (1954), the Supreme Court held that fraud is actionable when it is grounded in a promise coupled with a present intention not to fulfill it. During the summary judgment hearing on the fraud counterclaim, the Millers' counsel persuasively argued:

> [T]here has been, we believe, actual fraud in the way that Charleston Lumber conducted its business knowing it was overbilling Miller Housing, knowing it would take a lot of effort by Miller Housing to catch it. When errors were caught and credits were due and intentionally delaying giving credits because "sometimes people forget the credits are due." Obviously Charleston Lumber is going to dispute the inference from the facts, but we think that it is information that a jury needs to hear.
> This isn't just a case, Your Honor, of unintentional overbilling [on a] sporadic basis . . . . Mr. Ritchie, their [Charleston Lumber] credit man, admitted that he couldn't point to one bill for any period that was correct. . . . We have evidence . . . that an internal Charleston Lumber corporate decision was made to delay giving credits because sometimes people forget them. That is the testi-

mony in the record by a former Charleston Lumber employee. Obviously, they dispute it happened, but [the testimony creates] a question of fact.

Viewing the record in the light most favorable to the Millers, we find there was sufficient evidence to create a question of fact as to whether or not Charleston Lumber had made promises to the Millers with the present intention not to fulfill them.

The trial court also improperly ruled as a matter of law that the Millers failed to show any damages as a result of the alleged fraud. The Millers alleged damages of lost employee time based on their personnel having to spend numerous hours each month checking and correcting the bids versus the actual charges. We find that employee time is a compensable damage. In *Convoy Co. v. Sperry Rand Corp.*, 672 F. (2d) 781 (9th Cir. 1982), the court awarded employee lost time as compensable damages. The Ninth Circuit stated, "[t]he issue is not whether Convoy would have paid the supervisors' salaries if the defendant had not breached the contract, but whether the breach deprived Convoy of the services it paid for." *See also Dunn Appraisal Co. v. Honeywell Info. Systems, Inc.*, 687 F. (2d) 877 (6th Cir. 1982) (explicitly following the analysis in *Convoy*, the Sixth Circuit awarded one-fifth of Dunn's president's salary as damages because he claimed he spent approximately one-fifth of his time during the year dealing with system malfunctions of a computer whose capabilities Honeywell had misrepresented). The Third Circuit, in *Comdyne I, Inc. v. Corbin*, 908 F. (2d) 1142 (3rd Cir. 1990), recognized that if an employee's time is diverted from pursuit of the employer's business due to the fault of another, that party is responsible for those costs. We accept the reasoning in these cases. A further development of the facts is needed to determine the extent of actual damages. We therefore reverse the trial court's order of summary judgment on the Millers' counterclaim for fraud.

## IV.

The Millers next contend they were entitled to an award of attorney fees on their UTPA counterclaim since the jury specifically found Charleston Lumber

committed unfair or deceptive acts or practices in trade or commerce. We disagree and affirm the trial court's denial of attorney fees to the Millers. S.C. Code Ann. § 39-5-140 (1985) provides:

> (a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 [Unfair Trade Practices Act (UTPA)] may bring an action individually, but not in a representative capacity, to recover actual damages. If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of Section 39-5-20, the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs.

The statute clearly requires that in order to recover pursuant to the UTPA one must prove each of the following three elements by the greater weight or preponderance of the evidence: 1) a violation of the Act, 2) proximate cause, and 3) damages. Although the jury found the actions of Charleston Lumber constituted an unfair or deceptive act or practice in the conduct of trade or commerce, it further found the Millers suffered no actual damages as a proximate result of the unfair act. Therefore, adhering to the plain language of the statute, the Millers failed to prove the elements necessary to be awarded attorney fees.

## V.

Finally, the Millers contend the court erred in awarding Charleston Lumber $54,775.70 in attorney fees and $7,625.70 in costs in its December 1, 1993 Order because the same amount of costs had been previously awarded in its September 9, 1993 Order, making this award duplicitous. The Millers further maintain a significant amount of the attorney fees awarded to Charleston Lumber was for defending counterclaims on which Charleston Lumber was unsuccessful and

therefore the attorney fee award on those claims is reversible error.

Charleston Lumber requested $47,150 in attorney and paralegal fees, and $7,625.70 in costs, for a total fees and costs award of $54,775.70. In his September 9, 1993 Order, the trial judge awarded $7,625.70 in costs and deferred the awarding of fees until the case was resolved. Following the jury trial, the court awarded Charleston Lumber $54,775 in attorney fees. Charleston Lumber concedes in its brief that the court mistakenly entered the total figure of all fees and costs rather than just the attorney's fee figure of $47,150. Charleston Lumber maintains this error was merely a clerical error. We agree and therefore modify the attorney fee award to exclude costs previously awarded in the September 9, 1993 Order.

We hold, however, that the court was correct in awarding attorney fees to Charleston Lumber pursuant to the promissory note. The promissory note signed by Miller provided:

> If this note be placed in the hands of an attorney for collection after the same shall for any reason become due, or if collected by legal proceedings or through the probate or bankrupt [sic] courts, or under foreclosure proceedings under the mortgage securing this note, then all cost of collections, including a reasonable sum for attorney fee [sic] shall be added hereto as attorney's fees secured and collectible as the principal hereof.

The law is clear in South Carolina that attorney fees are recoverable when authorized by contract or statute. *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 427 S.E. (2d) 659 (1993). When the contract provides for "reasonable attorney's fees" without specifying a rate or amount, the amount of the fees to be awarded is left to the discretion of the court. *Dedes v. Strickland*, 307 S.C. 155, 414 S.E. (2d) 134 (1992).

Although the Millers allege the amount of the award was improper because some of Charleston Lumber's fees were attributable to defending counterclaims and not collection on the note, we find this distinction specious. The trial court clearly found that the facts and issues surrounding the promissory note were intertwined with those of the counterclaims which required extensive discovery and

transformed a normally uncomplicated action on a note into complex litigation. We agree with the trial court and find the amount of the award, with a proper adjustment for the clerical error, was within the sound discretion of the trial judge, and he did not abuse that discretion. *See Hyload, Inc. v. Pre-Engineered Products,* 308 S.C. 277, 417 S.E. (2d) 622 (Ct. App. 1992) (The amount of attorney's fees awarded is within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of discretion). We therefore modify the attorney fee award to $47,150.

Affirmed in part, reversed in part, modifed in part and remanded.

SHAW and GOOLSBY, JJ., concur.