THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
MIT, Inc., Appellant,
v.
IGT, aka, IGT-North America and Collins Music Company,
Respondents.
 
 
 

Appeal From Jasper County
 James S. Gibson, Special Referee

Unpublished Opinion No. 2006-UP-264
Heard March 7, 2006  Filed May 24, 2006

AFFIRMED

 
 
 
Darrell Thomas Johnson, Jr., and Warren Paul Johnson, of Hardeeville, for Appellant.
H. Fred Kuhn, Jr., of Beaufort, for Respondents.
 
 
 

PER CURIAM:  MIT, Inc., appeals the special referees finding that MIT failed to prove damages in its claim against Collins Entertainment (aka Collins Music Company) under the South Carolina Unfair Trade Practices Act (UTPA).  We affirm.  
FACTS
The South Carolina video poker gaming industry was initiated on July 1, 1993, when the South Carolina Video Game Machines Act went into effect.  S.C. Code Ann. § 12-21-2770 (Supp. 1998).  At that time and for all times relevant to this case, IGT was the preeminent manufacturer of video poker gaming machines, and Collins Entertainment was IGTs exclusive distributor in South Carolina.   
In April of 1993, Oscar Tysinger purchased ten IGT Players Choice machines for $62,947.50 from Fred Collins, salesperson for Collins Entertainment.  Around May of 1993, Tysinger formed MIT with Walter McGee and Henry Ingram.  MIT operated and owned video poker machines in various locations throughout South Carolina.  All tolled, at the time of formation, MIT owned approximately thirty Players Choice machines (McGee owned twenty machines prior to formation).  MIT acquired additional used Players Choice machines from both Collins and others over time.  The trial court found MIT paid a total of $200,000 for the machines.     
On January 23, 1995, the South Carolina Supreme Court declared that video gaming machines with rolling screens that randomly stopped and awarded the player additional games based on winning combinations of words were slot machines and, thus, illegal in South Carolina.  State v. Four Video Slot Machines, 317 S.C. 397, 400, 453 S.E.2d 896, 898 (1995).  The decision rendered operation of the Players Choice machines illegal because the machines contained two rolling slot games.      
After the Supreme Courts decision, Tysinger asked Collins to remove the prohibited games from the machines.  Collins eventually provided Tysinger with a microchip that stopped the rolling games.  However, the microchip had a glitch:  the microchip not only stopped the rolling games, but also stopped one of the three card games originally on the machine, reduced the payout schedule, and caused the machine to misrepresent the payouts.  As a result of Collins alterations, the percentage pay table on the machines was reduced from ninety-six percent or ninety-eight percent to ninety-two percent, causing the machines to retain approximately three times as much of the players money.  Collins allegedly requested the ninety-two percent pay table change, and the requested change was confirmed by IGT.   In time, Collins fixed the machines so the original three card games could be played; however, Collins did not correct the reductions to the payout schedule.  The changes to the machines payout schedules allegedly reduced MITs profits because players were less willing to play machines with reduced odds for winning.  
After receiving numerous complaints from customers, Tysinger asked Collins for a program that would take the illegal rolling games off but leave everything else exactly as it was.  Collins informed Tysinger that IGT had his hands tied.  IGT informed Tysinger they could supply such a program, but any order must come from Collins with a detailed explanation of the desired objectives.  Tysinger asked Collins to order the curative program from IGT, but Collins failed to provide any curative microchip.   
MIT commenced this action on December 16, 1996, alleging conduct by IGT and Collins Entertainment violated the UTPA and an implied warranty of fitness for a particular purpose.  All claims against IGT were dismissed.  Collins filed a motion for summary judgment on both causes of action.  By order dated June 6, 2003, the trial court granted Collins Motion for Summary Judgment on the breach of implied warranty claim but found that there was a sufficient question for the fact finder on the UTPA claim.  By order dated August 20, 2004, the trial court found Collins violated the UPTA but MIT failed to prove damages.  MIT appeals the trial courts finding of no damages and its failure to award attorneys fees.             
STANDARD OF REVIEW
In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law. 
Okatie River, L.L.C. v. Southeastern Site Prep., L.L.C., 353 S.C. 327, 334, 577 S.E.2d 468, 472 (Ct. App. 2003).  In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judges findings.  Kiriakides v. Atlas Food Sys. & Servs., Inc., 338 S.C. 572, 580-81, 527 S.E.2d 371, 375 (Ct. App. 2000), affd as modified, 343 S.C. 587, 541 S.E.2d 257 (2001).  The judges findings are equivalent to a jurys findings in a law action, whether the findings are made with or without a reference.  Id.  
LAW/ANALYSIS
I.                 
Damages 
MIT contends the trial court erred in finding MIT failed to prove damages proximately caused by Collins conduct.  MIT asserts it suffered a property loss valued at $200,000 due to Collins Entertainments UTPA violation.  We disagree.   
[T]o recover pursuant to the UTPA one must prove each of the following three elements by the greater weight or preponderance of the evidence: 1) a violation of the Act, 2) proximate cause, and 3) damages. 
Charleston Lumber Co. v. Miller Housing Corp., 318 S.C. 471, 482, 458 S.E.2d 431, 438 (Ct. App. 1995).  Section 39-5-140(a) of the South Carolina Code (1985) provides:    

Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages.  If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of § 39-5-20, the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper.  Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorneys fees and costs.

The only issue relevant to this appeal is whether MIT proved Collins Entertainments conduct proximately caused MIT to suffer damages cognizable under the UTPA.  MIT argues they suffered an ascertainable loss of $200,000, the purchase price of the Players Choice machines, because Collins Entertainments conduct rendered the machines worthless.  The contention that the machines were valueless is based on Collins testimony, which reads as follows:  

Q:      If Mr. Tysinger comes to you and says Mr. Fred, Ive got these twenty IGT Players Choice machines you sold me, I need to get them out of my way, what will you give me for them, what would they be worth?
A:      To me?
Q:      Uh-huh (Affirmative response).
A:      I wouldnt pay him anything.  I might haul them away for him but I wouldnt pay him anything because I cant use them.  I cant sell them.  I cant operate them.  

The special referee interpreted Collins testimony as referring to the value of the machines as of March 26, 1999, and not at the time MIT purchased the machines, and found the record indicated MITs machines were not valueless.  The referee also found the true measure of damages was lost profits.  
We agree with the special referees conclusion that the machines were not valueless.  Collins statement can reasonably be interpreted as referring to the value of the Players Choice machines at the time the question was asked.  Collins was questioned in 1999 and was not asked to estimate the value of the machines at an earlier date.[1]  Moreover, the record indicates the machines clearly had some value after Collins altered the pay table.  In fact, MIT was able to make a considerable profit from several Players Choice machines in 1997, about two years after Collins initial alterations.  Five machines supplied and owned by MIT earned a net profit of $88,281.75 during the quarter ending June 30, 1997; a net profit of $57,391.69 during the quarter ending September 30, 1997; and a net profit of $65,694.66 during the quarter ending December 31, 1997.  Thus, at least some of MITs Players Choice machines remained in operation despite the glitch and were quite profitable.    
The record also indicates that despite MITs complaint regarding the payout schedule, MIT continued to use the Players Choice machines.  MIT did not replace them with better machines until the licenses for the Players Choice machines ran out.  This evidence supports a finding that the machines were not valueless; a reasonable business person would not continue to use a valueless product until the license ran out but would rather replace or discard the product immediately.  
Further, we agree with the special referees finding that the most appropriate method for calculating damages in this action was demonstrating a difference in profits between the original Players Choice machines and the machines as altered.  MITs UTPA claim is based on Collins Entertainments tampering with the payout schedule on the machines.  Thus, the true measure of damages is the lost profits suffered by the reduction in play based on the lowered pay tables.  Indeed, Tysinger admitted he was trying to prove the damages suffered in the form of the difference in profits from the time [the machines] got malfunctioned.  However, in a response to an interrogatory sent to MIT by Collins, MIT waived damages beyond the purchase price because they were unable to articulate a lost income figure.  MIT also specified at oral argument before this court that it was waiving all claims of lost profits.  
There was evidence in this case to support the special referees findings that MITs Players Choice machines were not without value after receiving Collins chip and that the true measure of damages in this case was lost profits.  Accordingly, we affirm the referees finding that MIT failed to prove the element of actual damages because MIT failed to prove how Collins conduct reduced the value of the Players Choice machines.  
II.              
Attorneys Fees 
MIT argues the trial court erred in failing to award attorneys fees despite finding Collins conduct violated the UTPA.  We disagree.  
This issue is not preserved for review.  It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.  Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998).  An issue is not preserved where the trial court does not explicitly rule on an argument and the appellant does not move to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Hawkins v. Mullins, 359 S.C. 497, 502, 597 S.E.2d 897, 899 (Ct. App. 2004).  In other words, the trial court must be given an opportunity to resolve the issue before it is presented to the appellate court. 
In re Michael H., 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004).  The trial court did not address the issue of attorneys fees in its order, and no Rule 59(e) motion was filed by MIT; thus, this issue is not preserved for review.  
On the merits, MIT is not entitled to an award of attorneys fees.  Section 39-5-140(a) provides: Upon the finding by the court of a violation of [the UTPA], the court shall award to the person bringing such action under this section reasonable attorneys fees and costs.  S.C. Code Ann. § 39-5-140(a) (1985)(emphasis added).  A person who may bring an action . . . to recover actual damages under section 39-5-140(a) is [a]ny person who suffers an ascertainable loss as a result of an UTPA violation.  MIT failed to prove any ascertainable loss and, thus, does not qualify as a person bringing an action under this article.  Therefore, MIT is not entitled to an award of attorneys fees. 
CONCLUSION
Based on the foregoing, we hold the record supports the trial courts finding that MIT failed to prove the element of damages.  The trial courts decision is accordingly
AFFIRMED.
BEATTY, SHORT, and WILLIAMS, JJ., concur.   

[1] Even if Collins testimony refers to the value of the Players Choice machines immediately after Collins alterations, his opinion is not dispositive.  Simply because the machines had no value to Collins does not necessarily mean they were valueless to all.  Considering Collins owned a large quantity of Players Choice machines and that Players Choice machines were no longer being played partly because Pot O Gold, a new machine, put them out of business, it is easy to understand why Collins would opine that the Players Choice machines were valueless to him.