# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Beneficial Financial I, Inc., successor by merger to
Beneficial Mortgage Co. of South Carolina, Appellant,

v.

Jon Windham, a/k/a Jon D. Windham; Frances
Windham, a/k/a Frances C. Windham; and Jerry Coker,
a/k/a Jerry L. Coker; Carolina Bank a/k/a Carolina Bank
& Trust Co., The United States of America, by and
through its agency, the Internal Revenue Service; and
The Citizens Bank, Defendants,

Of whom Jon Windham a/k/a Jon D. Windham is the
Respondent.

Appellate Case No. 2017-001954

―――――――――

Appeal From Florence County
Thomas A. Russo, Circuit Court Judge

―――――――――

Opinion No. 5753
Heard December 10, 2019 – Filed August 5, 2020

―――――――――

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

―――――――――

Rebecca Kinlein Lindahl and Richard L. Farley, both of
Katten Muchin Rosenman, LLP, of Charlotte, North
Carolina, for Appellant.

Penny Hays Cauley, Esquire of Hays Cauley, PC of
Florence, for Respondent.

**KONDUROS, J.:** In this foreclosure action, Beneficial Financial I, Inc. (Beneficial), lender, challenges the grant of summary judgment to Jon Windham, borrower, on his counterclaims for violation of the South Carolina Unfair Trade Practices Act (SCUTPA), fraud, negligent misrepresentation, intentional infliction of emotional distress, and negligent and reckless training and supervision. Beneficial argues Windham was not entitled to the award because Windham did not meet his burden of proof for any of his counterclaims, even though Beneficial did not submit evidence in opposition at the hearing. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

Windham entered into a Loan Repayment and Security Agreement (Agreement) and a mortgage (Mortgage) with Beneficial Mortgage Company of South Carolina dated June 25, 2002, in the amount of $191,912.61, to secure a loan for real property in Florence County, South Carolina. The Agreement required Windham to obtain title insurance and hazard insurance on the property, name Beneficial as loss payee, and provide Beneficial with an endorsement. The Agreement also stated Beneficial could place hazard insurance on the property if Windham failed to maintain the insurance or failed to provide proof of the insurance. The Agreement mandated Windham pay Beneficial the "[p]rincipal and [i]nterest computed at the [c]ontract [r]ate . . . and any monthly insurance premium, if elected."

On April 11, 2014, Beneficial filed a complaint against Windham to foreclose on the Mortgage, claiming Windham failed to pay "installments of principal and interest which became due on July 29, 2012," and seeking "the entire balance of said principal and interest due and payable at once" and attorney's fees and costs. Beneficial claimed in its "Notice Required by the Fair Debt Collection Practices Act," the total debt Windham owed as of April 9, 2014, was $230,522.96. Beneficial also sought reformation of the deed and Mortgage.[1]

---

[1] Beneficial named Frances Windham, Jerry Coker, Carolina Bank, the United States of America by and through the Internal Revenue Service, and the Citizens Bank, in addition to Windham, in its complaint. Jon Windham, however, is the sole respondent in this appeal.

Windham answered, asserting Beneficial "wrongfully force-placed insurance" on the property "even though [Beneficial] had knowledge that said property was already insured." Windham argued this added insurance cost "caused [his] payment to increase and also resulted in [his] payments to only be credited to the additional insurance cost rather than to the principal and interest due on the mortgage" and "began the process of [his] initial delinquency." Furthermore, Windham alleged Beneficial represented to him "that if he were to make bi-monthly payments of $1,000.00 on the loan for six months, he would be offered a loan modification"; however, Windham alleged Beneficial stopped accepting his payments and did not contact him to modify the loan as promised. Windham counterclaimed against Beneficial alleging violation of the SCUTPA, intentional infliction of emotional distress, negligent training and supervision, reckless and wanton training and supervision,[2] breach of implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation.

Beneficial responded to Windham's counterclaims, admitting it "force[-]placed insurance on its collateral and charged Windham with the cost of force-placed insurance" but it did so "as permitted by the loan documents." Moreover, Beneficial admitted Windham made some payments of $1,000 and those payments were applied in accordance with the Mortgage.

During the discovery process, Beneficial repeatedly delayed Windham's deposition of a Beneficial corporate witness. Ultimately, the parties entered into a consent order (Consent Order) dated June 9, 2017, in which Beneficial agreed to produce the corporate witness pursuant to Rule 30(b)(6), SCRCP, on July 10, 2017. The parties also agreed that failure on the part of Beneficial to produce the witness would "result in [Beneficial] being prohibited from offering any testimony in support of [Beneficial's] foreclosure action and also prohibit [Beneficial] from offering any testimony in defense of . . . Windham's counterclaims."

Beneficial's corporate representative did not appear for the deposition on July 10, 2017, and Windham filed a motion for summary judgment, a memorandum in support, and his own affidavit. The circuit court held a hearing on August 31, 2017, and found Beneficial "failed to overcome the facts and law set forth by [Windham]" and "there is no genuine issue of material fact in this matter and that

_____

[2] The circuit court awarded Windham summary judgment "on his claims of negligent and reckless training and supervision," without expressly stating the term "wanton." The parties also refer to negligent and reckless training and supervision on appeal.

summary judgment is due to be granted in [Windham's] favor."  This appeal followed.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder."  *Wright v. PRG Real Estate Mgmt., Inc.*, 426 S.C. 202, 211, 826 S.E.2d 285, 290 (2019) (quoting *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001)).  "When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the trial court pursuant to Rule 56(c), SCRCP."  *Id.* (quoting *Turner v. Milliman*, 392 S.C. 116, 121-22, 708 S.E.2d 766, 769 (2011)).

> Rule 56(c), SCRCP, provides a circuit court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  "On summary judgment motion, a court must view the facts in the light most favorable to the non-moving party."

*Id.* at 211-12, 826 S.E.2d at 290 (alteration in original) (quoting *George*, 345 S.C. at 452, 548 S.E.2d at 874).

"Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law."  *Singleton v. Sherer*, 377 S.C. 185, 197, 659 S.E.2d 196, 202 (Ct. App. 2008).  "When reasonable minds cannot differ on plain, palpable, and indisputable facts, summary judgment should be granted."  *Id.*

> When a motion for summary judgment is made *and supported* as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), SCRCP (emphasis added).

Our supreme court has addressed the initial burden the moving party carries to succeed on a summary judgment motion:

> The grant of summary judgment is appropriate only if it is clear that no genuine issue of material fact exists, that inquiry into the facts is not desirable to clarify the application of the law, and that the movant is entitled to judgment as a matter of law.
>
> A party seeking summary judgment has the burden of clearly establishing by the record properly before the [c]ourt the absence of a triable issue of fact.  All inferences from facts in the record must be viewed in the light most favorable to the party opposing the motion for summary judgment.  A party who fails to show the absence of a genuine issue of material fact is not entitled to summary judgment even though his adversary does not come forward with opposing materials.

*Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 422, 392 S.E.2d 460, 462 (1990) (citations omitted).

**LAW/ANALYSIS**

**I.    Preservation**

Initially, Windham argues Beneficial did not preserve any issue on appeal. Windham alleges because Beneficial "did not object to [his] affidavit and failed to file any memorandum of law in opposition" to his motion, Beneficial failed to preserve any issue regarding the summary judgment award on appeal.  We disagree.

> [A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review. . . .  Error preservation requirements are intended "to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments."

*Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (quoting *I'On v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000)).

However, our supreme court has found an issue is preserved for appeal when

> [t]he trial judge's order granted respondents' motion for summary judgment on *precisely* the grounds argued by respondents at the summary judgment hearing. While that order did not restate the ground on which petitioner opposed the motion—a duty based on the existence of a prior attorney-client relationship—the order explicitly addresses that argument by ruling respondents "owed no duty or obligation" to petitioner. This ruling is sufficient to preserve petitioner's argument that respondents owed a duty to petitioner, and petitioner was not required to file a Rule 59(e)[, SCRCP,] motion to alter or amend in order to preserve the issue for appeal.

*Spence v. Wingate*, 381 S.C. 487, 489, 674 S.E.2d 169, 170 (2009).

The Consent Order precluded Beneficial from "offering any testimony in defense of . . . Windham's counterclaims," and it did not file a memorandum or affidavit related to the summary judgment. However, the circuit court considered the pleadings in its review of the evidence, including Beneficial's pleadings, which attached the Agreement and Mortgage. Furthermore, the circuit court granted Windham summary judgment on the grounds Windham argued at the hearing. Therefore, the issue of whether summary judgment was proper based solely on the evidence put forth by Windham was raised to and ruled upon by the circuit court. Accordingly, we hold Beneficial's issue alleging error in the award is preserved for review on appeal.

## II.    Judgment by Default

Beneficial contends the circuit court erred in granting Windham summary judgment on his claims on the basis Beneficial did not submit evidence in opposition to Windham's motion for summary judgment. Beneficial asserts the circuit court granted summary judgment to Windham "by default." We disagree.

On a motion for summary judgment, the moving party carries the burden of proof even when the nonmoving party does not submit any evidence in opposition.

> A party seeking summary judgment has the burden of clearly establishing by the record properly before the [c]ourt the absence of a triable issue of fact. All inferences from facts in the record must be viewed in the light most favorable to the party opposing the motion for summary judgment. A party who fails to show the absence of a genuine issue of material fact is not entitled to summary judgment *even though his adversary does not come forward with opposing materials*.

*Standard Fire Ins. Co.,* 301 S.C. at 422, 392 S.E.2d at 462 (emphasis added) (citations omitted).

Windham submitted a memorandum and an affidavit in support of his motion for summary judgment, and the circuit court heard the motion on August 31, 2017. The circuit court's order provided it had reviewed "the pleadings, affidavits on file, [Windham's] brief, and arguments of counsel." Additionally, Beneficial expressly agreed in the Consent Order if it did not provide a Rule 30(b)(6), SCRCP, witness it would be prohibited "from offering any testimony in defense of . . . Windham's counterclaims." We, therefore, find Beneficial's argument the circuit court granted summary judgment by default to be without merit.

## III.    Burden of Proof

Beneficial contends the circuit court erred in granting summary judgment to Windham because he did not meet his burden of proof required by Rule 56(c), SCRCP. We agree in part, disagree in part, and address each cause of action in turn.[3]

### A. SCUTPA

---

[3] On appeal, Beneficial argues Windham is not entitled to summary judgment on his claim of breach of the implied covenant of good faith and fair dealing, in addition to Windham's counterclaims addressed herein. However, Windham did not seek summary judgment on this claim, and the circuit court did not award summary judgment on this claim.

Beneficial maintains the circuit court erred in granting summary judgment to Windham on his counterclaim for a violation of the SCUTPA. We disagree.

The SCUTPA establishes: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." S.C. Code Ann. § 39-5-20(a) (1985). "An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive." *Wright v. Craft*, 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct. App. 2006) (quoting *Wogan v. Kunze*, 366 S.C. 583, 606, 623 S.E.2d 107, 120 (Ct. App. 2005)). "In order to be actionable under SCUTPA, the unfair or deceptive act or practice must have an impact on the public interest. . . . 'An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the act's embrace.'" *Skywaves I Corp. v. Branch Banking & Tr. Co.*, 423 S.C. 432, 453, 814 S.E.2d 643, 655 (Ct. App. 2018) (quoting *Noack Enters., Inc. v. Country Corner Interiors, Inc.*, 290 S.C. 475, 479, 351 S.E.2d 347, 349-50 (Ct. App. 1986)), *cert. denied*, S.C. Sup. Ct. Order dated Nov. 9, 2018.

"After alleging and proving facts demonstrating the potential for repetition of the defendant's actions, the plaintiff has proven an adverse effect on the public interest . . . the plaintiff need not allege or prove anything further in relation to the public interest requirement." *Crary v. Djebelli*, 329 S.C. 385, 388, 496 S.E.2d 21, 23 (1998).

> An impact on the public interest may be shown if the acts or practices have the potential for repetition. The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.

*Id*. at 453-54, 814 S.E.2d at 655 (quoting *Singleton v. Stokes Motors, Inc.*, 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004)). However, these are not the only two ways impact on the public interest may be shown, rather "each case must be evaluated on its own merits." *Crary*, 329 S.C. at 388, 496 S.E.2d at 23.

In the present case, we evaluate whether Windham proved there was no genuine issue of material fact regarding his SCUTPA counterclaim. Windham asserted

Beneficial's conduct violated the SCUTPA by (1) "foreclosing on a tract of land which [Beneficial] knows, or should know, was not to be secured by any mortgage between [Beneficial] and [Windham]"[4]; (2) "force-placing insurance on [Windham's] property when [Windham] already had insurance, causing [Windham's] monthly payment to increase"; (3) "taking monthly payments from [Windham] and applying them all to alleged interest and fees"; (4) "unilaterally ceasing acceptance of payments from [Windham] on his loan"; and (5) "refusing to offer [Windham] a loan modification, even after stating it would do so."

Windham asserted in his affidavit he maintained the required insurance on his property and it was in effect when Beneficial force-placed insurance on the property.  He also attested he repeatedly provided proof the insurance was in effect to Beneficial.  Windham's counterclaim alleged the actions of Beneficial "have a real and substantial potential for repetition and are a threat to the public interest," arguing Beneficial's actions "were in line with its policies and procedures," Beneficial "services numerous loans in South Carolina, as well as across the country," and Beneficial's actions were "done under the authority of the same policies, procedures, and leadership that are in effect relating to every other loan managed, serviced and/or written by [Beneficial]."  Significantly, in its motions to dismiss and reply, Beneficial "admit[ted] that it force placed insurance on its collateral and charged Windham with the cost of force-placed insurance, as permitted by the loan documents."

We recognize the information provided to the circuit court consisted of the pleadings, Windham's affidavit and memorandum, and a brief hearing and did not include exhibits or testimonial evidence; however, accepting this uncontroverted proof as presented, and giving the benefit of all reasonable inferences to Beneficial as we must when reviewing a grant of summary judgment, we find there is no dispute—Windham met his burden of proof on his counterclaim for a violation of the SCUTPA by Beneficial.  In its answer, Beneficial admitted it was in the business of providing mortgages to homeowners.  According to the pleadings and Windham's affidavit, Beneficial force-placed hazard insurance on Windham's home in breach of its contract with Windham, prejudicing Windham by raising his mortgage payments so substantially Windham was no longer able to pay down his

---

[4] Windham asserted in his answer and counterclaim the Mortgage wrongly covered one and one-half acres, even though Windham "alerted the loan officer that the Note was only to be secured by a mortgage on one acre of [his] property, not the entire 1.5 acre lot."  The Mortgage Windham signed, however, indicated the property subject to the Mortgage is "approximately 1 ½ acres."

principal. Instead, Windham found himself with a pending foreclosure. Beneficial's unfair practice of force-placing hazard insurance in violation of a mortgage contract has the potential for repetition. *See Crary*, 329 S.C. at 388, 496 S.E.2d at 23 (1998) (holding evidence indicating mortgage broker had other opportunities to enter into similar transactions was sufficient evidence to support a finding of a SCUTPA violation); *York v. Conway Ford, Inc.*, 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997) (holding allegation of car dealership's alleged misrepresentation of a car's accident history was sufficient to survive directed verdict motion for SCUTPA violation because the dealership was in the business of selling cars; thus, "[c]ertainly the alleged acts or practices have the potential for repetition"). Therefore, we affirm the circuit court's grant of summary judgment to Windham on his counterclaim against Beneficial for a violation of the SCUTPA.

### B. Fraud

Beneficial contends the circuit court erred in granting summary judgment to Windham on his counterclaim for fraud. We agree.

Windham asserted Beneficial committed fraud by orally representing to him if he made $1,000 payments twice each month for six months, Beneficial would modify his loan; however, Beneficial did not modify the loan.

> To establish a cause of action for fraud, the following elements must be proven by clear, cogent, and convincing evidence: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. The failure to prove any element of fraud or misrepresentation is fatal to the claim.

*Schnellmann v. Roettger*, 373 S.C. 379, 382, 645 S.E.2d 239, 241 (2007) (citations omitted). "Failure to prove any element of fraud is fatal to the action. Furthermore, '[f]raud cannot be presumed; it must be proved by clear, cogent, and convincing evidence.'" *Robertson v. First Union Nat'l Bank*, 350 S.C. 339, 348, 565 S.E.2d 309, 314 (Ct. App. 2002) (citation omitted) (quoting *Foxfire Village, Inc. v. Black & Veatch, Inc.*, 304 S.C. 366, 374, 404 S.E.2d 912, 917 (Ct. App.

1991)).

Our supreme court's decision in *Turner v. Milliman*, 392 S.C. 116, 708 S.E.2d 766 (2011), provides targeted guidance. In *Turner*, the supreme court elaborated upon the precept that neither a broken promise nor making a statement to do something in the future, that is not done, can qualify as a fraudulent or negligent representation: "Evidence of a mere broken promise is not sufficient to prove negligent misrepresentation." *Id*. at 123, 708 S.E.2d at 769-70 (quoting *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 407, 581 S.E.2d 161, 166 (2003)).

In addressing the difference between that which is actionable or that which does not qualify as fraudulent, the *Turner* court noted "to be actionable, a statement must relate to a present or preexisiting fact, and cannot be predicated on unfulfilled promises or statements as to future events." *Id.* at 123, 708 S.E.2d at 770. On the other hand, "where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is fraudulent misrepresentation of a fact, and actionable as such." *Id.* (quoting *Davis v. Upton*, 250 S.C. 288, 291, 157 S.E.2d 567, 568 (1967)).

The *Turner* court also noted breaking a contract does not constitute fraud, it is rather the component of making a representation without any intention of going through with the agreement that is actionable. *Id.* at 123-24, 708 S.E.2d at 770. The party alleging such fraud must therefore provide additional evidence than simply stating his opponent did not do that which he promised to do: "'Evidence of mere nonperformance of a promise is not sufficient to establish either fraud or a lack of intent to perform.' An inference of a lack of intent to perform a promise can only be made when nonobservance of a promise is coupled with other evidence." *Id.* (quoting *Woods v. State*, 314 S.C. 501, 506, 431 S.E.2d 260, 263 (Ct. App. 1993)). *See also Bishop Logging Co. v. John Deere Indus. Equip. Co.*, 317 S.C. 520, 526-27, 455 S.E.2d 183, 187 (Ct. App. 1995) ("Not every statement made in the course of a commercial dealing is actionable at law. It is well settled that to establish actionable fraud there must first be a false representation. The false representation must be predicated upon misstatements of fact rather than upon an expression of opinion, an expression of intention or an expression of confidence that a bargain will be satisfactory." (citations omitted)).

Conversely, this court has reversed the award of summary judgment for fraud when the record contained testimony from an employee admitting intentional wrongdoing. *Charleston Lumber Co. v. Miller Housing Corp.*, 318 S.C. 471, 480-81, 458 S.E.2d 431, 437 (Ct. App. 1995). With such testimony, this court found

"there was sufficient evidence to create a question of fact as to whether or not [the respondent] had made promises to the [appellants] with the present intention not to fulfill them." *Id.* at 481, 458 S.E.2d at 437; *see also Winburn v. Ins. Co. of N. Am.*, 287 S.C. 435, 440, 339 S.E.2d 142, 146 (Ct. App. 1985) ("The truth or falsity of a representation must be determined as of the time it was made or acted on and not at some later date. Inferences of fact, like fullbacks on football teams, do not ordinarily run backward." (citations omitted)).

Windham has not put forward evidence that Beneficial acted with knowledge that it had no intention of keeping its promise to modify Windham's loan at the time the representation was made. Therefore, we reverse the circuit court's award of summary judgment on Windham's counterclaim for fraud in order for further discovery and litigation to resume.

### C. Negligent Misrepresentation

Beneficial argues the circuit court erred in granting summary judgment to Windham on his counterclaim for negligent misrepresentation. We agree.

Windham summarily stated in his answer and counterclaim for negligent misrepresentation Beneficial made a false representation in the course of its business and Beneficial had a pecuniary interest in making those statements and owed a duty to Windham to communicate truthful information, which Beneficial breached. Further, Windham contended he relied upon Beneficial's representations that if he made the $1,000 payments, Beneficial would offer a loan modification. Windham asserted the result of Beneficial's actions caused him "pecuniary losses including mental anguish, physical sickness and suffering, embarrassment and humiliation."

> In a claim for negligent misrepresentation, a plaintiff must prove that:
>
> > (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the

representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

*Robertson*, 350 S.C. at 349, 565 S.E.2d at 314 (quoting *deBondt v. Carlton Motorcars, Inc.*, 342 S.C. 254, 266-67, 536 S.E.2d 399, 405 (Ct. App. 2000)).

"Evidence of a mere broken promise is not sufficient to prove negligent misrepresentation any more than it is sufficient to prove fraudulent misrepresentation." *Winburn*, 287 S.C. at 442, 339 S.E.2d at 147.

In *Sauner*, 354 S.C. at 408, 581 S.E.2d at 167, the supreme court determined a company's statement about what it would do in the future did not constitute a misrepresentation.

[The company's] statement that it would establish fair market value for the lots is a statement about the future. The appraisals had not been conducted at the time it made the statement. As such, it is not actionable as a misrepresentation. To be actionable, "the representation must relate to a present or pre-existing fact and be false when made."

*Id.* (quoting *Koontz v. Thomas*, 333 S.C. 702, 713, 511 S.E.2d 407, 413 (Ct. App. 1999)). The court held, "Representations based on statements as to future events or unfulfilled promises are not usually actionable." *Id.*

As with the claim for fraud, Windham did not prove Beneficial made a false representation. Windham asserted Beneficial offered him a loan modification if he made the payments. We find this statement was a representation as to a future event, and Windham did not prove the representation was false when made. Therefore, we reverse the finding of the circuit court granting summary judgment to Windham on his claim for negligent misrepresentation.

### D. Intentional Infliction of Emotional Distress

Beneficial contends the circuit court erred in granting summary judgment to Windham on his counterclaim for intentional infliction of emotional distress. We agree.

Our supreme court set forth the elements of the cause of action for the intentional infliction of emotional distress in *Hansson v. Scalise Builders of South Carolina*, 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007) (quoting *Ford v. Hutson*, 276 S.C. 157, 162, 276 S.E.2d 776, 778 (1981)):

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it."

"[W]hen ruling on a summary judgment motion, a court must determine whether the plaintiff has established a prima facie case as to each element of a claim for intentional infliction of emotional distress." *Id*. at 358, 650 S.E.2d at 71.

Our supreme court also established the claim of intentional infliction of emotional distress carries with it a higher level of proof:

> To permit a plaintiff to legitimately state a cause of action by simply alleging, "I suffered emotional distress" would be irreconcilable with this [c]ourt's development of the law in this area. In the words of Justice Littlejohn, the court must look for something "more"—in the form of third party witness testimony and other corroborating evidence—in order to make a prima facie showing of "severe" emotional distress.

*Id*. at 358-59, 650 S.E.2d at 72.

The *Hansson* court found the court of appeals erred in reversing the award of summary judgment to Hansson's employer on Hansson's intentional infliction of emotional distress cause of action when Hansson alleged losing sleep, a diagnosis of grinding his teeth while sleeping, and expenses for dental work. *Id*. at 359-60,

650 S.E.2d at 72.  The supreme court ruled Hansson "failed to provide any legally sufficient evidence in this case to show that his resulting emotional distress was 'severe' within the contemplation of this [c]ourt's mental anguish jurisprudence." *Id.*

Here, Windham claimed intentional infliction of emotional distress in his answer and counterclaims, asserting Beneficial either "intentionally or recklessly inflicted severe emotional distress," or knew such would result from its conduct.  Windham asserted Beneficial's conduct was "part of a conscious scheme . . . to take [Windham's] home away from him after [Beneficial] was the cause of the initial delinquency by wrongfully force-placing insurance on [Windham's] home."  Windham alleges the resulting emotional distress was "so severe that no reasonable person could be expected to endure it" and included "mental anguish, anxiety, and humiliation" and seeks actual and punitive damages.  In his affidavit, Windham asserted:

> I have spent the last three years suffering with the constant fear that my home was going to be taken away from me . . . .  I have spent the last several years in emotional distress, dealing with anxiety, embarrassment, humiliation, and fear.  I have also suffered physical distress, including loss of sleep, headaches, pain and suffering.

Windham did not sufficiently meet his burden to prove his distress was so extreme to render summary judgment of his claim appropriate.  "Under the heightened standard of proof for emotional distress claims emphasized in *Ford*, [276 S.C. at 161, 276 S.E.2d at 778,] a party cannot establish a prima facie claim for damages resulting from a defendant's tortious conduct with mere bald assertions."  *Hansson*, 374 S.C. at 358, 650 S.E.2d at 72.  Therefore, we reverse the circuit court's award of summary judgment on Windham's claim for intentional infliction of emotional distress.

### E. Negligent and Reckless Training and Supervision

Finally, Beneficial asserts the circuit court erred in granting summary judgment to Windham on his counterclaim against Beneficial for the negligent and reckless training and supervision of its employees.  We agree.

In his memorandum in support of his motion for summary judgment, Windham asserted Beneficial "should have known that its failure to properly supervise the individuals to which it assigned [Windham's] loan could result in the conduct happened upon [Windham]."

> In a negligence action, a plaintiff must show that (1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered an injury or damages.

*Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135, 638 S.E.2d 650, 656 (2006).

Our supreme court "has long noted the 'troublesome question of the distinction to be made in the degrees of negligence.'" *Berberich v. Jack*, 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011) (quoting *Hicks v. McCandlish*, 221 S.C. 410, 414, 70 S.E.2d 629, 631 (1952)). "'[N]egligence is the failure to use due care,' i.e., 'that degree of care which a person of ordinary prudence and reason would exercise under the same circumstances.' It is often referred to as either ordinary negligence or simple negligence." *Id.* (alteration by court) (quoting *Hart v. Doe*, 261 S.C. 116, 122, 198 S.E.2d 526, 529 (1973)).

> "Recklessness implies the doing of a negligent act knowingly"; it is a "conscious failure to exercise due care." If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care. . . . The element distinguishing actionable negligence from willful tort is inadvertence.

*Id.* (quoting *Yaun v. Baldridge*, 243 S.C. 414, 419, 134 S.E.2d 248, 251 (1964)).

"[N]egligence may be so gross as to amount to recklessness, and when it does, it ceases to be mere negligence and assumes very much the nature of willfulness." *Id.* (quoting *Jeffers v. Hardeman*, 231 S.C. 578, 582-83, 99 S.E.2d 402, 404 (1957)).

> A plaintiff in a civil case may have a number of causes of
> action at his disposal through which he may seek to hold a
> tortfeasor or other responsible party liable for his injury,
> and this is no less the case when a plaintiff alleges that he
> has been injured by an employee acting in the course and
> scope of his employment.

*James v. Kelly Trucking Co.*, 377 S.C. 628, 631, 661 S.E.2d 329, 330 (2008).

> Just as an employee can act to cause another's injury in a
> tortious manner, so can an employer be independently
> liable in tort.  In circumstances where an employer knew
> or should have known that its employment of a specific
> person created an undue risk of harm to the public, a
> plaintiff may claim that the employer was itself negligent
> in hiring, supervising, or training the employee, or that
> the employer acted negligently in entrusting its employee
> with a tool that created an unreasonable risk of harm to
> the public.

*Id.*

We note the decision in *Rickborn v. Liberty Life Insurance Co.* also provides
guidance.  321 S.C. 291, 468 S.E.2d 292 (1996).  In *Rickborn*, our supreme court
found the negligence of a life insurance company's employee "was imputable to"
the company.  *Id.* at 305, 468 S.E.2d at 301.  The supreme court considered acts of
wrongdoing on the part of the employee that were known to the company, such as
knowledge an application for insurance was incomplete, failure to determine a
corrected application was submitted, and evidence the company knew the
employee had "mishandled the preparation of other applications and was
considered by [the company] to be a below average sales agent." *Id.* at 303, 468
S.E.2d at 299.  The supreme court found these facts proved the company "was
alerted to the fact that [the employee's] carelessness could cause harm and,
therefore, it breached a duty of care owed to [the applicant] by failing to properly
supervise [the employee]." *Id.*

Here, the record does not support Windham's award of summary judgment for
negligent or reckless supervision and training.  Windham offered only his general
and unspecific assertion Beneficial failed to train and supervise its agents, without

any evidence of acts of wrongdoing by an employee, and without evidence an employee's actions were imputable to Beneficial. Reviewing the evidence in the light most favorable to Beneficial, Windham failed to show there was no genuine issue of material fact as to whether Beneficial negligently or recklessly trained and supervised its employees. Accordingly, we reverse the circuit court's grant of summary judgment on Windham's negligent and reckless training and supervision counterclaim against Beneficial.

## CONCLUSION

We affirm the circuit court's award of summary judgment to Windham on his counterclaim against Beneficial for a violation of the SCUTPA, finding Windham proved there was no genuine issue of material fact regarding this claim. We reverse the circuit court's award of summary judgment to Windham on his counterclaims for fraud, negligent misrepresentation, intentional infliction of emotional distress, and negligent and reckless training and supervision because Windham failed to prove there were no genuine issues of material fact regarding these counterclaims, and we remand these claims to the circuit court. Therefore, the circuit court's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**LOCKEMY, C.J., and HILL, J., concur.**